James W. Hillhouse et al. *vs.* Giosue Duca et als.

Second Judicial District, Norwich, April Term, 1924.
Wheeler, C. J., Beach, Curtis, Keeler and Marvin, Js.

For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury.

The cutting and removal of pipe from an old house to be used later in the same building when moved to another lot, is not work upon a new building begun on the former site of the old house six months afterward, nor so connected with such work as to form the basis for a mechanic's lien on the new building.

The object which the parties had in view is a necessary consideration in construing the language of a waiver of mechanic's lien.

Hillhouse *v.* Duca.

In the present case, the defendants, who joined in executing an absolute and unqualified waiver and relinquishment of mechanic's lien in order to enable the owners to secure mortgage loans, claimed that its legal effect should be limited to correspond with the intention of all the parties that its operation should be restricted to securing priority to the mortgages and that it should not affect in any way the rights of the lienors among themselves. *Held* that the claim was without merit, *first*, because it was not supported by the facts found and, *second*, because it would involve not a construction of the language of the instrument but a reformation thereof by adding a new clause limiting its effect—a result not authorized by the pleadings or the finding.

The defendants also claimed that they executed the waiver on condition that it be signed by the plaintiffs, who were also lienors, and that the absence of the plaintiffs' signatures rendered it invalid. *Held* that the trial court's finding that there was an understanding to that effect was not sufficient to support the defendants' claim in the absence of a finding that otherwise the defendants would not have executed and delivered the waiver.

The attorney, in whose office the defendants executed the waiver, talked with one of the plaintiffs by telephone and then reported to the defendants that the plaintiffs had agreed to sign the waiver on the following day. *Held* that the plaintiffs were not estopped by the attorney's representation in the absence of evidence that they knew what he said to the defendants and assented thereto.

The fact that the plaintiffs later accepted $1,500 of the proceeds of the mortgage loans as consideration for executing a limited waiver in favor of one of the mortgagees did not create an estoppel in favor of the defendants, since they could not possibly have changed their course of action in reliance thereon.

Nor were the plaintiffs under any obligation to inform the defendants that they had not signed the general waiver which was a matter of record.

Argued April 30th—decided June 30th, 1924.

SUIT to foreclose a mechanic's lien and for other relief, brought to the Superior Court in New London County and referred (*Jennings, J.*) to a committee who heard the evidence and reported the facts; the court, *Brown, J.*, accepted the amended report of the committee, adjudged the validity and order of precedence of certain liens and a provisional sale of the property, from which certain alleged lienors appealed. *No error.*

This action was brought against the owners of the equity in certain real property in New London and certain incumbrancers alleged to be subsequent to the plaintiffs. Judgment was rendered by the court finding that the plaintiffs had a valid lien upon the premises superior to that of all of the defendants, and granting a foreclosure by sale. The relative priority of the subsequent incumbrancers was fixed in the judgment. The complaint is in the usual form alleging a mechanic's lien in favor of plaintiffs and making all persons with an apparent interest inferior to plaintiffs, parties defendant. The defendant The F. H. & A. H. Chappell Company in the first defense of its answer puts in issue all of the material parts of the complaint. A second defense is as follows: "1. The defendant The F. H. & A. H. Chappell Company specifically denies that the interest in said real estate which it claims by way of a mechanic's lien is subject to or subordinate to the plaintiffs'. lien. 2. During the period covered by the alleged lien of the plaintiffs and the lien of the defendant The F. H. & A. H. Chappell Co., they and other parties performing work and furnishing materials in the construction of said building, were called upon by the holders of the first and second mortgages on said real estate to waive any rights of lien they might have as against the first and second mortgages from time to time in order to procure advancements and payments of money under said mortgages by the mortgagors thereof to the defendants, DiNoto and Duca and by them paid to the plaintiffs and defendant. 3. Such waivers of lien as were executed by this defendant were given upon the understanding and agreement that these plaintiffs and all other parties entitled to mechanic's liens did or would waive such rights of lien as they might have against said real estate so that all parties and particularly these plaintiffs and this defendant would

stand on equal footing as far as their respective rights of lien on said real estate were concerned."

The defendant Kennedy filed an answer essentially the same as that filed by the Chappell Company, a third defense setting up a lien in his favor superior in accrual to that of the plaintiffs, and a cross-complaint claiming foreclosure of his lien. The plaintiffs by their reply to the answers and by answer to Kennedy's cross-complaint, put in issue all allegations material to the points raised on appeal.

A committee was appointed to hear the parties and find the facts arising in the pleadings. From this report, accepted by the court, it appears that prior to the erection of the building known as the Highland Apartments, the defendants Duca and DiNoto were the owners of a tract of land in New London extending from Bristol Street on the north through to Granite Street on the south with a frontage of ninety-seven feet on Bristol Street and of ninety-four feet and ten inches on Granite Street. For purpose of improvement the owners of the land divided it into two parts, one fronting on Granite Street with a passage leading through to Bristol Street, and the other taking up the remainder of the larger lot fronting on Bristol Street. To this latter tract, hereinafter referred to as the Bristol Street lot, the owners moved an old house formerly facing Granite Street, leaving the other portion of the original lot free for development by the erection of the Highland Apartments. The defendant Kennedy, beginning October 6th, 1919, cut out and removed certain pipe therefrom to be replaced when the house should be removed to its location on Bristol Street, which was afterward done. Kennedy commenced work on the Highland Apartments April 10th, 1920. At this time the defendant the Land, Mortgage and Title Company had a first mortgage antedating all mechanics' liens.

The owners of the premises, after commencing the erection of the apartment building, had difficulty in financing their enterprise. In addition to the lien of the plaintiffs and of those of the appellants, there were others for services rendered and material furnished upon the apartment building. Messrs. Lomas & Nettleton were asked to lend the owners $80,000 and to take a first mortgage as security, and the Land, Mortgage and Title Company to lend $15,000 on a second mortgage. This was agreed to by the proposed mortgagees provided all persons having a right of lien on the premises could be induced to waive the same. A meeting of the various creditors of the owners was held at the office of the attorneys of the latter, at which the plaintiffs were not present, and those present at the request of the owners and Mr. McGuire, their attorney, in consideration of certain payments to them on account of their claims agreed to waive their rights of lien by an instrument severally signed by them as follows:

"To all whom it may concern:—This certifies that we, the undersigned, of the Town of New London, County of New London and State of Connecticut, in consideration of One Dollar received to our full satisfaction of Agostino DiNoto and Giosue Duca, both of said Town of New London have waived and relinquished and do hereby waive and relinquish all liens and claims of liens we now have or may hereafter have upon a piece of land and all the buildings thereon standing, situated in said Town of New London, on the side of Granite Street and bounded and described as follows, namely: Northerly by Bristol street, ninety-seven feet; Easterly by land of heirs of John Champion, two hundred thirty-five feet, 11 inches; Southerly by Granite Street, ninety-four feet, 10 inches; Westerly by land of F. W. Waller, two hundred twenty-nine feet,

10 inches; and more particularly described in a Deed from —— to said —— dated —— and recorded in —— Land Records, volume —— page ——, for labor done and materials furnished for the construction and erection of said buildings. Witness our hands and seals this 30th day of December, A. D. 1920."

At the meeting of the creditors above referred to, Mr. McGuire arranged with them individually to waive liens for varying fractions of their claims. Lomas & Nettleton were represented by Russell Lomas, who had a mortgage and note for $80,000, and the Land, Mortgage & Title Company was represented by Mr. Young, who had a second mortgage and note for $15,-000. These notes and mortgages were to be executed as first and second respectively only if all incumbrances and liens could be taken care of. There was an understanding among the creditors present that they would sign waivers if Hillhouse & Taylor would do so. Mr. McGuire called Hillhouse & Taylor on the telephone and had a long talk with Mr. Taylor. Mr. McGuire came back and reported to Mr. Lomas and Mr. Young that Mr. Taylor would not come down that day, but that he would come down Monday and waive the lien. Mr. Taylor testified at the hearing that Mr. McGuire asked him if he were going to hold up the whole deal, and he told Mr. McGuire that he wasn't going to hold up the whole deal, and then Mr. McGuire asked him if he would come down and sign the waiver, and he told Mr. McGuire no.

Upon the condition that all should waive liens and upon express assurance of Mr. McGuire that Mr. Taylor would come down and sign the waiver on Monday, which Mr. Young insisted should be stated in a letter to Mr. Broder, counsel for the Land, Mortgage & Title Company, and also to the Land Mortgage & Title Company, $57,000 was paid over to Mr. McGuire

as follows: · $42,000 by Lomas & Nettleton and $15,000 by the Land, Mortgage & Title Company. All this money was deposited to the credit of Hull, McGuire & Hull and checked out in varying amounts to pay off the Land, Mortgage & Title Company's first mortgage, to the different creditors, and to Hull, McGuire & Hull for their attorney fee, except $1,500, which was reserved for Hillhouse & Taylor. Hillhouse & Taylor knew this $1,500 was reserved for them out of the fund obtained December 31st, 1920. They did not waive at any time any lien on the Highland Apartments in favor of the Land, Mortgage & Title Company. After the parties named above had signed the waiver, Hillhouse & Taylor refused to sign any general waiver, but upon Mr. McGuire's explanation that their refusal to waive put him in an embarrassing position with Lomas & Nettleton, the first mortgagees, for whom he was preparing a certificate of title, they, for a payment of $2,500, made up of the $1,500 left over from the fund of December 31st, 1920, and $1,000 advanced by Lomas & Nettleton on April 27th, 1921, waived in favor of Lomas & Nettleton to the amount of $42,000 then advanced by them on the mortgage. They afterward waived, in favor of Lomas & Nettleton only, two or more times, exacting in each case a definite sum, and waiving up to the amount only which was advanced upon the first mortgage, until the whole thereof had been advanced. Hillhouse & Taylor apparently took no steps to notify the Land, Mortgage & Title Company directly of their refusal to waive as to its mortgage, having communicated with Mr. McGuire as representating Duca and DiNoto and Lomas & Nettleton. So that the Land, Mortgage & Title Company did not know until August of 1921 that Hillhouse & Taylor had not waived. Hillhouse & Taylor during this time were insisting upon and receiving a large share of the instalments of the

Lomas & Nettleton mortgage payments; and the Land, Mortgage & Title Company was at the time paying the interest upon the first mortgage to prevent a foreclosure. Mr. McGuire was acting throughout the placing of the two mortgages as attorney for Duca and DiNoto. He was called upon by Lomas & Nettleton to furnish a certificate of title in connection with their loan. The note and mortgage to them were prepared in his office. He has acted for Lomas & Nettleton before and since this transaction in connection with other loans. The firm of Hull, McGuire & Hull had acted as counsel for Hillhouse & Taylor in several matters before this transaction, but was not employed by Hillhouse & Taylor in this matter until about the time this suit was brought. Mr. Taylor inquired of Mr. McGuire whether there was anything in the situation to prevent him from acting for Hillhouse & Taylor in foreclosing the lien, and upon being answered that there was not, instructed Mr. McGuire to foreclose. The firm of Hull, McGuire & Hull acted from that time for Hillhouse & Taylor until it appeared that Mr. McGuire might have to testify; then they withdrew and Mr. King and Mr. Whittlesey have represented Hillhouse & Taylor.

The report of the committee was accepted by the court, and judgment of foreclosure by sale rendered determining the priority of the various defendants and determining the amounts due the several parties. It was adjudged that the plaintiffs had a lien upon the Highland Apartments tract superior to that of all of the defendants for the amount of the indebtedness found due to them, that the defendant Carlstrom had the second claim thereon, and that the Land, Mortgage & Title Company, upon its mortgage for $15,000, had the third claim thereon, and a first lien upon the Bristol Street tract. The court found that the appealing defendants had no lien and no participation in the pro-

ceeds of sale was given them in the judgment, from which they appealed.

Further facts appear in the opinion.

*Arthur T. Keefe* and *Arthur B. Calkins,* for the appellants (defendants Harry J. Kennedy and The F. H. & A. H. Chappell Company).

*J. Gilbert Calhoun,* with whom, on the brief, was *Edward W. Broder,* for the appellee (defendant The Land, Mortgage & Title Company of Hartford).

*William A. King* and *Charles B. Whittlesey,* for the appellees (plaintiffs).

KEELER, J. The appellants attack the judgment of the court in twelve reasons of appeal which are identical in form and claim, and the appellant Kennedy files two additional reasons of appeal assigning error as to the finding by the court as to the date of the commencement of his lien, and in ruling that he was not entitled to interest on his claim. We will first consider these claims. The committee in his report, accepted by the court, expressly finds as a fact that the work by Kennedy upon the Highland Apartments began April 10th, 1920, which date, of course, fixes the time of commencement of the lien. Kennedy claimed that he began work October 6th, 1919, basing his claim upon the fact found by the committee that on the date last mentioned he cut out and removed pipes from the old house before the same was moved and while situated upon the Granite Street lot to be stored and eventually again used in the same house when moved to the Bristol Street lot, although in fact they were not so used. No further work was done upon the Granite Street lot or any building thereon until April 10th, 1920. The find-

ing is one of fact by the committee, and no remonstrance was filed by Kennedy to the committee's report. The plaintiffs therefore contend that the finding concludes the matter. Kennedy claims that the finding is one of mixed law and fact, that is, that the finding of the date of April 10th, 1920, as the commencement of the lien is dependent upon the subordinate facts found with reference to the work done in October, 1919. Assuming this defendant to be correct in this regard, the finding of the date in April, 1920, is clearly justified by all subordinate facts. The cutting, removal and storage of pipe to be used later in the same building when removed to another lot, is not work upon a new building begun on the former site of the old house six months afterward, nor so connected with any such work as to form any basis for a claim of lien on the new building, and the fact was correctly found by the committee. As regards the question of interest entering into the total amount claimed by Kennedy, it appears that the committee found certain facts with reference thereto, but stated no conclusion, and that the court, having found that Kennedy had no claim whatever by way of lien, was not concerned to find the amount of the owners' indebtedness to him; and as the conclusion we have reached will not result in that task being assumed by another judge, the matter becomes academic and immaterial. The court committed no error in respect to these reasons of appeal.

Ten of the remaining twelve reasons of appeal fall into two groups, the first, second, third, sixth and ninth relating to the construction and validity of the waiver of lien executed by appellants as determined by its form and content in view of the circumstances surrounding its execution; the fourth, fifth, seventh, eighth and tenth are concerned with a claim that plaintiffs are not entitled to the benefit of the waiver of liens, by

reason of conduct on their part which estops them from so doing.

Taking up the claims of appellants as outlined in the first group of reasons of appeal just noted, we find the contention that the object of the waiver as disclosed in the negotiations preceding its execution indicated an understanding and intent that the liens of the parties executing the waiver were only so far to be affected as to subordinate them to the mortgages which Lomas & Nettleton and the Land, Mortgage and Title Company proposed to take from the owners, leaving the rights and claims of all lienors as between themselves unaffected thereby. In construing any instrument we have recourse to the negotiations and other circumstances attendant upon its execution. In *Weinberg* v. *Valente*, 79 Conn. 247, 249, 64 Atl. 337, we said, in considering the construction and consequent effect of a waiver of lien, that "it is necessary to consider the words employed by the parties . . . in the light of the object which they had in view while employing them."

First considering the words employed by the parties in the instant case, we find in the instrument as executed an absolute and unqualified waiver and relinquishment of all liens and claims of lien which the signers had or might thereafter have upon the land described and all buildings thereon, making use of a form readily recognizable as in frequent use for such a purpose. This is conceded by appellants, who contend, however, that the instrument, viewed in connection with surrounding circumstances, must be construed as limited to a waiver in favor of the proposed mortgagees. Under the claim made this object is to be effected not by giving some meaning to words employed, different from their apparent import, but by reading into the instrument itself an additional clause limiting its effect in accordance with appellants' claim. It is

extremely doubtful whether the object sought could legally be brought about in this way. In doing so we should enter the domain of reformation for which no claim is made in the pleadings, and for which the record does not afford the necessary findings of fact.

Passing to the negotiations attendant on the execution of the instrument, we find them concerned with the familiar situation of a sort of arrested development in the construction of buildings, for the financing of which adequate resources have not been provided in advance, and by reason of which the parties get together to see what can be done to save the situation. In the present case relief was thought available by means of loans from Lomas & Nettleton and the Land, Mortgage & Title Company, secured by mortgages, which of course these parties would not furnish unless the hazard of mechanics' liens prior to their intended incumbrances should be obviated. The attorney for the owners and for Lomas & Nettleton so stated to a large number of persons, assembled in his office, who had theretofore furnished labor and material in the construction of the apartment house, for some of which they had not been paid. Terms were made for the division of the sums to be advanced by the intended mortgagees and its payment to the lienors, conditional upon their executing a waiver of their liens. As is quite usual the various contractors insisted that all should sign the waiver, and it was deemed necessary from that point of view that the plaintiffs, who were contractors for a large amount of work, should do so, as the other contractors had an understanding that they would sign waivers if the plaintiffs would do likewise. The attorney, Mr. McGuire, called up the office of Hillhouse & Taylor by telephone and talked with Mr. Taylor of that firm. The attorney reported to Mr. Lomas representing Lomas & Nettleton and to

Mr. Young representing the Land, Mortgage and Title Company, that Mr. Taylor would come down Monday and waive the lien. As is fully detailed in the finding of facts, Mr. Taylor in fact testified that he refused to do so. Mr. McGuire gave written assurance to the corporation last named of the conversation had with Mr. Taylor, as he reported it to the assembled creditors of the owner. The plaintiffs in fact refused to sign the waiver, and it was not until April 27th, 1921, that they executed any waiver, and then only in favor of Lomas & Nettleton, and received $2,500. Afterward they executed other waivers, but in each case exacted a definite payment, and waived only to the extent of the amount at the time advanced on the first mortgage.

Recurring to the claim of appellants that the circumstances just referred to and all that transpired at the attorney's office at this conference appearing in the statement of facts justify the construction of the waiver desired by them, we find nothing to support it.

No question in any way arose as to the form of the waiver; the various parties intended to waive liens. They knew they had to do so in order to get payments for their services and material furnished and to be furnished out of funds arising from the loans to the owners. They also knew that while their waiver ran only to the owners, its purpose and object was for the security of persons with whom they might deal with reference to the premises. What was desired by all was very plain; the instrument presented for their execution and afterward executed by them reflected their desires, and was suited to their purpose. Nothing whatever appears in the record to show that there was the least care or desire on the part of anyone to limit the waiver for the benefit only of the mortgagees. It is futile, therefore, to claim that the purpose to make safe the security of the mortgagees so dominates the whole transaction as to mod-

ify by construction the plain terms of this written instrument, and thus vary or qualify the express terms of a written contract.

The next claim of appellants under the first group of reasons of appeal is that the waiver is invalid by reason of its execution being conditional upon the signature of the plaintiffs to it or some document of like import and obligation, and that for failure in this regard, it should be held as non-existent and as furnishing no security to anyone and not available by anyone in aiding any claim or action, and that all liens should remain in the position as though no waivers had been signed. We fail to find anything in the record that justifies this contention. It is true that the committee found that there was an understanding by those contractors who executed the waiver that the plaintiffs would call and execute the same the next day, but it is nowhere found that they made the delivery of the instrument conditioned upon the addition of plaintiffs' signatures, or that they would not have signed the waiver and authorized its delivery (either to the owners or their attorney) unless and until the same had been so signed. They signed it and they took their money and also their risks. There was no stipulation in this regard. The waiver was made primarily for the protection of Lomas & Nettleton and was delivered to their attorney, though the consideration named therein moves from the owners and they are the beneficiaries named in the instrument. It was at once placed on record. The plaintiffs seem to have treated the claim which we have just considered as one for rescission or cancellation of the waiver, and advance weighty reasons why such a claim cannot prevail, but we do not so conceive its import. There is lack of proper pleading, necessary parties and facts found to justify relief of that nature. The appellants appear only to have claimed that the waiver legally

never went into effect, and in this claim they are not justified; and the court committed no error in so holding.

Passing to the errors assigned in the group of reasons above referred to which from various claims and points of view raise the question of estoppel of the plaintiffs in favor of the appellants, we may observe that while considerable citation of authority upon this topic generally is made in the briefs of the contending parties, the acts and representations of the plaintiffs as the same appear in the record when applied to a statement of the elements of an estoppel *in pais* when predicated upon the conduct of a plaintiff, will readily determine whether such facts exist in the instant case as to call for the application of the principle.

In *Monterosso* v. *Kent*, 96 Conn. 346, 350, 113 Atl. 922, this court, quoting from the opinion in *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 326, said: "For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury."

The claim of an estoppel made by appellants is based upon two principal contentions, first, that plaintiffs were bound by the representation made by McGuire that they would come down on the following Monday and sign the waiver which the other parties assembled in his office agreed to sign and did sign, and second, that the sum of $1,500 had been reserved for payment to plaintiffs and that they knew it at the time of the telephone conversation with Taylor. The committee so finds as to the fact last stated and the court accepted his report.

Taking up the first claim, no attempt was made by

the committee to make a definite finding as to whether McGuire's statement to the assembled creditors, or Mr. Taylor's version of the conversation, represented the truth, and hence there is no finding that the plaintiffs made any promise to sign the waiver, nor can any such promise be inferred from anything appearing in the record. McGuire was not then acting for the plaintiffs, and they were in nowise bound by his report of the conversation had with Taylor. To be so bound, it was necessary for him to know that McGuire was making the representations made by the latter, and that he assented thereto, or that facts existed from which his assent could be fairly implied. *Morgan* v. *Farrell*, 58 Conn. 413, 426, 20 Atl. 614. The record is bare of any facts to show such assent.

Passing to the second claim of an estoppel by conduct of the plaintiffs in receiving a payment of $2,500, in which was included the $1,500 originally reserved for payment to them at the meeting in December, we note that it is found that this sum was paid them April 27th, 1921, and then not for signing a general release similar to that signed by appellants, but a partial release to Lomas & Nettleton only to the extent of $42,-000 of the total of their mortgage, and that subsequent waivers to this firm were made only up to the amount advanced, and a definite payment was in each case exacted. It is not found that plaintiffs knew that the payment of $2,500 to them included the $1,500 allotted to them in the negotiations in December, and we fail to see that it would have in any way affected the equities of the case if they had known. They were receiving $2,500 for a definite act to be performed by them, in no way relating in terms or intent to the waiver signed by appellants and others, and it is difficult to see how the receipt of this sum in April could have been relied on by the appellants as evidencing an appropriation by

the plaintiffs of the benefits of the December agreement, and so estopping them from setting up the fact that they were not parties thereto. There is nothing whatever in the record to show that appellants knew of this payment, or relied on it as an assurance that plaintiffs had come in upon the general plan, and were in effect in the position of having assented to it. The form of the release to Lomas & Nettleton, if appellants had informed themselves regarding it, would have shown that the intent of plaintiffs was very decided not to sign a general release.

We fail to see that there is any merit in the appellants' claim that plaintiffs should have informed them that they had not and would not participate in signing the general release. They made no concealment of their position, and every act performed by them was additional evidence of their persistence therein. The original general release was a matter of record, and appellants before being put to possible future loss to any great extent, could have satisfied themselves that plaintiffs had not signed it.

For the reasons above stated, we conclude that plaintiffs were estopped neither by representations or conduct.

The claim of plaintiffs, that even if the release which appellants signed never had existed, the appellants' liens were junior to that of plaintiffs, and that therefore the latter have not been injured by the judgment, is not sound, since in the case supposed, instead of the finding and judgment of the Superior Court that appellants had parted with their liens by release, and had no liens at all, there would have been a finding of their position in the order of priority and a legal possibility of receiving something from the avails of a foreclosure sale if the same were of an amount to reach down and cover any portion of their claims. The fact that from

a financial point of view such a position was not likely to be productive, does not alter their legal rights.

The eleventh and twelfth reasons of appeal are concerned with the claims of appellants as to the proper disposition of the proceeds of sale of the Bristol Street property, and of the rents arising out of a receivership in the present cause. Our conclusion that the appellants have no liens upon the property involved in this action makes a discussion of these claims unnecessary.

The appellee, the Land, Mortgage and Title Company, claim, on the one hand, that plaintiffs should be held to have joined in the original general waiver, but that in any event appellants executed the same, and that this appellee should have the benefit thereof, as held by the trial court. The claims of this appellee have been fully considered in the foregoing discussion.

There is no error.

In this opinion the other judges concurred.