WARREN ANDRULAT *v.* BROOK HOLLOW ASSOCIATES ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

410

Argued November 14, 1978—decision released January 2, 1979

*Frank A. Leone,* with whom, on the brief, was *James H. Throwe,* for the appellant (plaintiff).

*Elliott B. Pollack,* with whom was *Kenneth W. Hayden,* law student intern, for the appellees (defendants).

PETERS, J. This case arises out of amendments to the Connecticut mechanic's lien statutes which were prompted by this court's decision in *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 362 A.2d 778 (1975), vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393 (1976), cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976). *Roundhouse* declared the existing statutory procedures governing mechanic's liens unconstitutional for failure to afford to affected property owners an effective opportunity to be heard, in violation of the due process clauses

of the federal and state constitutions. The General Assembly, in 1975 and 1976, revised those statutes to comply with constitutional mandates and at the same time to provide some protection for lienors whose liens antedated *Roundhouse.*

The plaintiff in the present case alleges that he, Warren Andrulat, doing business as Andrulat Associates, rendered services and furnished materials to premises owned by the defendant Brook Hollow Associates in the town of Wallingford, Connecticut. On July 30, 1974, in accordance with the statutes then operative, he filed a timely written certificate of mechanic's lien which was duly recorded in the Wallingford land records. On August 2, 1974, the defendant Brook Hollow as principal, and the defendant St. Paul Fire and Marine Insurance Company as surety, substituted a bond in the amount of $16,800 for the mechanic's lien, and the plaintiff in turn filed a release of the mechanic's lien. Nothing further had transpired by April, 1975, when *Roundhouse* was decided; but for *Roundhouse,* the plaintiff would have had two years' time, that is, until July 30, 1976, to pursue his claim. The post-*Roundhouse* amendments reduced the period of limitations to one year; General Statutes § 49-39; but allowed prior liens to be "validated" until September 23, 1975. General Statutes § 49-37a. The plaintiff availed himself of this opportunity, complying with the statutory directions for validation on August 13, 1975. He did not, however, commence the present suit until June 3, 1976, more than a year after the lien was originally filed, and was then met by the special defense of the statute of limitations. The trial court, upon a motion for summary judgment based upon the statute of limitations, decided for the defendants on the plaintiff's first count, his suit

on the bond, but not on the plaintiff's second count, his suit in quantum meruit. The plaintiff appeals from the rendering of summary judgment by the trial court.

The issue before us is the proper interpretation of § 49-39 of the General Statutes which provides: "No mechanic's lien shall continue in force for a longer period than one year after such lien has been perfected, unless the party claiming such lien commences an action to foreclose the same . . . within one year from the date such lien was filed with such town clerk . . . . With respect to any . . . lien which was validated in accordance with the provisions of section 49-37a, such one-year period . . . shall toll from the date of such validation." The plaintiff argues that the import of the language "shall toll from" is to delay the commencement of the one-year limitation until the date of validation. The defendant urges that "shall toll from" means "shall be tolled until," so that the statutory grace period for validation only stayed but did not displace the running of the statute of limitations. It is fair to say that the statutory mandate that a period of limitations "shall toll from the date" of a stipulated event, rather than that it should be "commenced by" or be "tolled by" such an event, is an instruction of unusual obscurity.

The plaintiff does not seriously contest the power of the legislature to amend the statute of limitations governing mechanic's liens, even if such an amendment retroactively shortens the period of limitations for actions accruing before the amendment. Although changes in the statute of limitations may not retroactively bar actions already pending; *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 197, 286

A.2d 308 (1971); they do govern actions brought subsequent to the effective date of the amended statute. *Diamond National Corporation* v. *Dwelle,* 164 Conn. 540, 542, 325 A.2d 259 (1973). The legislature's decision to require foreclosure actions on mechanic's liens to be brought in one rather than in two years was a response to criticism of the former practice in *Roundhouse,* and was effected by amendment of General Statutes § 49-39 in 1975. Public Acts 1975, No. 75-418, § 3. See *Six Carpenters, Inc.* v. *Beach Carpenters Corporation,* 172 Conn. 1, 5, 372 A.2d 123 (1976). The legislative history of the 1975 act makes it clear that the act was meant to be retroactive. See 18 H. R. Proc., Pt. 10, 1975 Sess., pp. 4925, 4928–29. Undoubtedly the provisions for validating prior liens were intended to mitigate, in part, the joint impact of *Roundhouse* and the 1975 act. However, the validating provision for liens for which a bond had been substituted[1] prior to April 22, 1975, did not expressly spell out the relationship between validation and the statute of limitations. Public Acts 1975, No. 75-418, § 9. In 1976, there was a series of further amendments to the mechanic's lien statutes, which revised § 49-39 to contain its present, puzzling language. Public Acts 1976, No. 76-290, § 2.

The plaintiff's reading of § 49-39 would make his present action timely, because, he maintains, the statute starts the running of the period of limitations anew, for another whole year, upon due and proper validation. Since validation occurred on August 13, 1975, this would have allowed suit to

---

[1] The act also contained provisions for validating liens without bonds, but that validation was somewhat more limited, in order to accommodate possible claims of third-party intervenors. Public Acts 1975, No. 75-418, § 7, now General Statutes § 49-35d.

be commenced as late as August 13, 1976, even later than the close of the two-year time period to which he was originally entitled. This would be a surprising consequence of a series of statutory amendments intended, contrariwise, to abbreviate the period of limitations. It would further constitute a dramatic discrepancy in treatment between validation of direct liens, and validation of liens for which a bond had been substituted. The former liens receive no statutory grace period at all, with revival merely reinstating the lien, under § 49-35d (a), "as of the effective date of the original mechanic's lien so validated." Some difference in treatment may be warranted, as a matter of policy, because substitution of a bond eliminates constraints on alienation of the formerly secured property. Legislative recognition of this distinction, in providing for "tolling" only in bond transactions, should, however, not be deemed to overlook entirely the fundamentally similar nature of these two forms of mechanic's liens. That similarity is underscored by § 49-37 (a) which provides that ordinarily (in the absence of special validation), "[w]henever a bond has been substituted for any lien, . . . unless an action is brought to recover upon such bond within one year *from the date of recording the certificate of lien,* such bond shall be void." (Emphasis added.) Public Acts 1975, No. 75-418, § 8.

The trial court, in granting the defendants' motion for summary judgment, held the date of validation of the lien, under § 49-37a, to be "inapplicable" in determining whether the limitations period had run under § 49-37 (a). That holding overlooks § 49-39, but it does furnish a useful point of departure for analysis of the latter's language that a validated lien "shall toll from the date of such validation."

The holding below describes accurately the state of the law before the 1976 amendments. There is no reason to assume that the legislature meant to depart radically from the pattern it had created only one year earlier. Instead, by allowing for "tolling," the legislature extended by a few months the period during which a validated lien might be enforced. We conclude that the phrase "shall toll from the date of such validation" means that the plaintiff's cause of action was suspended from April 22, 1975, the date of *Roundhouse,* until August 13, 1975, the date of validation. The addition of this period of suspension to a one-year cause of action that accrued on July 30, 1974, does not render timely a complaint filed on June 3, 1976.

There is no error.

In this opinion the other judges concurred.