## PAT CAMPUTARO *v.* STUART HARDWOOD CORPORATION ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued February 13—decision released May 13, 1980

*Charles G. Albom,* with whom, on the brief, was *Elaine Braffman,* for the appellants (defendants).

*Joseph Glass,* with whom was *Lynda M. Batter,* for the appellee (plaintiff).

PETERS, J. The principal issue in this appeal is the lienability of a contractor's work in road building and site preparation under the mechanic's lien act before its 1974 amendment. The plaintiff, Pasquale Camputaro, also known as Pat Camputaro, doing business as Roma Construction Company, sued to recover for services rendered and materials furnished pursuant to an agreement with the corporate defendant, the Stuart Hardwood Corporation (formerly the Stuart Paley Co., Inc.). One count of the complaint sought damages under a bond given in substitution for a mechanic's lien by the corporate defendant as principal, and by the individual defendants, Stuart H. Paley and Jerome L. Paley, as sureties. Three other counts sought damages from the corporate defendant alone for breach of contract, implied contract and quasi-contract. The defendants responded with a variety of defenses, as well as claims by way of setoff and counterclaim alleging defective performance by the plaintiff. The referee to whom the case was referred, *Thim, J.,* rendered judgment for the plaintiff on the first two counts of his complaint and on the defendants' setoff and counterclaim. The defendants' appeal contests all aspects of the judgment except the ruling on the setoff and counterclaim.

The underlying facts, which are no longer at issue, establish the following: Camputaro and Hardwood agreed that Camputaro would do work on two related projects on an unimproved tract of land in Bethany. This land is owned by the individual defendants, the Paleys. Stuart Paley is the president and the majority stockholder of Hardwood. Hardwood had previously agreed with the Paleys that it would improve the land by building upon it a prefabricated sheet metal building for use in Hardwood's business.

The first project consisted of the completion of a roadway leading to the projected building site on the land. This contract was negotiated on February 17, 1974, and completed on March 1, 1974. A few days later, Camputaro billed Hardwood for $8910 and was paid in full. A second invoice, claiming an additional amount of $8511.85 for gravel furnished in connection with the road work, was disputed and has not been paid.

The second project involved preparation of the site for the proposed building. On March 1, 1974, Camputaro agreed to clear, grade and fill the land at and around the building site so as to create level ground, a smooth site, on which the building might be placed. Although his work included excavation, he was not hired to excavate for footings or for a foundation for the building. Between March and June 19, 1974, Camputaro excavated about four and one-half acres of land for which he claimed entitlement to $130,098.50 for equipment rental, materials, supervision and insurance. Camputaro ceased working on the project in June when a disagreement arose about payment terms. At that time, Hard-

wood had already paid Camputaro $20,000 under the site preparation agreement; the remaining amount was in dispute and was not paid.

After Camputaro ceased working on the project on June 19, 1974, Hardwood engaged in extensive preparation for an expanded site layout for its plant. A prefabricated building was acquired by the defendants and delivered to their property. There was, however, no evidence of any attempt to raise, erect or construct the building on the prepared site after it had been cleared. For reasons that the record does not clearly disclose, the defendants chose not to erect the building.[1]

The plaintiff, Camputaro, on June 25, 1974, filed a mechanic's lien in the sum of $118,566.36 for work done and materials furnished "in the construction of a certain building owned by said Stuart H. Paley and Jerome Paley." The lien was refiled, on July 15, 1975, in conformity with the validation provisions of General Statutes § 49-35d[2] enacted in response to this court's decision in *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 385, 362 A.2d 778, vacated, 423

[1] The exhibits indicate that the defendant encountered zoning problems which prevented completion of the project.

[2] General Statutes § 49-35d provides in pertinent part: "VALIDATION OF LIEN RECORDED PRIOR TO APRIL 22, 1975. (a) Any person who prior to April 22, 1975, placed a mechanic's lien upon any real estate pursuant to sections 49-33, 49-34, 49-35 and 49-38, which was not released or discharged on such date, may validate such lien by filing a new certificate of mechanic's lien and serving a true and attested copy thereof pursuant to the provisions of section 49-34, and, if applicable, by serving the notice required by section 49-35, within ninety days from June 25, 1975, and such mechanic's lien shall be deemed to have originated as of the effective date of the original mechanic's lien so validated, provided, such validation shall not affect the interest of any person acquiring an interest in such real estate as an owner or mortgagee from April 22, 1975, through June 25, 1975, inclusive."

U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976). Notice of intention to claim the mechanic's lien was properly served upon the defendants. On March 10, 1977, the defendants substituted their bond in the appropriate amount so as to secure release of the plaintiff's mechanic's lien pursuant to General Statutes § 49-37.

The defendants raise three issues on this appeal. (1) With respect to the first count, the action on the bond against all of the defendants, does the work done by the plaintiff qualify as lienable under the mechanic's lien statute as it existed in 1974, before the amendments that went into effect on October 1 of that year? (2) With respect to the first count and the second count, the contract action against the corporate defendant, were items attributed to supervision, to a grader, and to insurance allowable under the contract? (3) With respect to both counts, were the damages awarded by the trial court impermissibly in excess of the amount demanded in the plaintiff's prayer for relief?

# I

The defendants claim that the work done by the plaintiff, Camputaro, does not entitle him to recover on the bond given in lieu of the mechanic's lien. Obviously, the plaintiff's rights on the bond can rise no higher than those acquired under the underlying mechanic's lien for which the bond is merely a substitute. General Statutes § 49-37; *Biller* v. *Harris,* 147 Conn. 351, 353, 161 A.2d 187 (1960); *Hartlin* v. *Cody,* 144 Conn. 499, 505, 134 A.2d 245 (1957). Nor are the rights acquired by the initial filing of the lien substantively altered by its sub-

sequent refiling for purposes of validation pursuant to General Statutes § 49-35d. See *Andrulat* v. *Brook Hollow Associates,* 176 Conn. 409, 411, 407 A.2d 1017 (1979); *Foran* v. *Zoning Board of Appeals,* 158 Conn. 331, 337, 260 A.2d 609 (1969). The amendments to the mechanic's lien act necessitated by our decision in *Roundhouse,* supra, were not designed to supersede entirely the previously existing mechanic's lien laws but rather were intended to provide procedural safeguards to make the act constitutional. The trial court concluded that Camputaro had a valid mechanic's lien because road work and site preparation constituted "materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances," which is the operative language of General Statutes § 49-33 as it existed at the time of the initial filing. The defendants maintain, and we agree, that this conclusion was in error.

Whether work done in furnishing materials and rendering services is work lienable under the mechanic's lien act is a question that this court has addressed with relative infrequency over the past 120 years. We have never had the occasion to consider the lienability of road work and site preparation. Nevertheless, the principles that guide our interpretation of mechanic's lien legislation are well settled. Although this legislation creates a statutory lien in derogation of the common law; *Gruss* v. *Miskinis,* 130 Conn. 367, 370, 34 A.2d 600 (1943); *National Fireproofing Co.* v. *Huntington,* 81 Conn. 632, 634, 71 A. 911 (1909); see also *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85 (1937); its remedial purpose to furnish security for a contractor's labor and materials requires a generous construction. *Stone* v. *Rosenfield,* 141 Conn. 188,

191, 104 A.2d 545 (1954); *City Lumber Co.* v. *Borsuk,* 131 Conn. 640, 645, 41 A.2d 775 (1945); *Pierce, Butler & Pierce Mfg. Corporation* v. *Enders,* 118 Conn. 610, 615, 174 A. 169 (1934); *Balch* v. *Chaffee,* 73 Conn. 318, 320, 47 A. 327 (1900). Generosity of spirit does not, however, permit departure from reasonable compliance with the specific provisions of the statute. *Stone* v. *Rosenfield,* supra; *City Lumber Co.* v. *Borsuk,* supra. It is clear, furthermore, that the provisions of our statute differ sufficiently from the mechanic's lien legislation of other states so that precedents elsewhere are of limited utility in the interpretation of our act. *New Haven Orphan Asylum* v. *Haggerty Co.,* 108 Conn. 232, 236, 142 A. 847 (1928); *Hartford Builders Finish Co.* v. *Anderson,* 99 Conn. 343, 345, 122 A. 76 (1923).

Camputaro's work on the Paley property was performed at a time when the mechanic's lien act made lienable "materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances . . . ." General Statutes § 49-33 (Rev. to 1972).[3] It is significant that the statute did not then expressly cover improvements to realty, although such language is found in the statutes of other states, and is now in § 49-33 as amended effective October 1, 1974.

---

[3] General Statutes § 49-33 (Rev. to 1972) then provided in pertinent part: "MECHANIC'S LIEN. PRECEDENCE. RIGHTS OF SUBCONTRACTORS. If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances, and such claim is by virtue of an agreement with or by consent of the owner of the land upon which such building is being erected or has been erected or has been moved, or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building, with the land on which it stands, shall be subject to the payment of such claim."

Our cases construing the language of the then existing statute have required, as a condition of lienability, that the work done be incorporated in or utilized in the building (or the appurtenance) to be constructed, raised, removed or repaired. The strongest precedent for the plaintiff is *Marchetti* v. *Sleeper,* 100 Conn. 339, 342, 123 A. 845 (1924), which held that an architect's plans and specifications constitute lienable services rendered in the construction of a building. But *Marchetti* goes on to observe that "there can be no lien until some actual or theoretical increment of value has attached itself to the land *by the commencement of the building* . . . ." (Emphasis added.) Ibid. Our other cases have consistently, with equal emphasis, insisted that mechanic's lien work be "wrought into" the liened property in some fashion. Thus the installation of fixtures that do not become part of the realty; *Hartlin* v. *Cody,* 144 Conn. 499, 506, 134 A.2d 245 (1957); or of electrical work that is not permanently attached to the realty; *Stone* v. *Rosenfield,* 141 Conn. 188, 192, 104 A.2d 545 (1954); *Abbadessa* v. *Puglisi,* 101 Conn. 1, 124 A. 838 (1924); the removal of pipe from one building that is not incorporated into the building that is its replacement; *Hillhouse* v. *Duca,* 101 Conn. 92, 101, 125 A. 367 (1924); and the furnishing of materials or equipment that is not shown to have gone into the construction or repair of a building; *Lewin & Sons, Inc.* v. *Herman,* 143 Conn. 146, 150, 120 A.2d 423 (1956); *Chapin* v. *Persse & Brooks Paper Works,* 30 Conn. 461, 473 (1862); *Rose* v. *Persse & Brooks Paper Works,* 29 Conn. 256, 267–68 (1860); are all unlienable. *Balch* v. *Chaffee,* 73 Conn. 318, 321, 47 A. 327 (1900), did hold lienable as an appurtenance the construction of an artesian well not physically connected to the

house which it was to serve, but *Balch* v. *Chaffee,* supra, 320, describes the category of appurtenance as one of "detached *structures*" (emphasis added) and its holding, thus limited, is therefore consistent with the structural constraints that our other cases have uniformly imposed.

This well settled interpretation of the mechanic's lien act leads inexorably to the conclusion that lienability of Camputaro's work cannot be sustained because the work was never incorporated in the construction, raising, removal or repair of any building or appurtenance thereto. Had the contemplated building been completed, had it even been begun, the test of *Balch* v. *Chaffee,* supra, and *Marchetti* v. *Sleeper,* supra, looking to whether the work done was a convenient necessity to the building's construction, might well have brought the plaintiff within the ambit of the act.[4] Regrettably for Camputaro, the evidence at trial showed only that the prefabricated building had been acquired and delivered to the Paleys' property and not that it had been erected in whole or in part.

It may well be that cases like this one led to the amendment of § 49-33. It is surely a hard result to have lienability turn on conduct of the owner of property that a contractor has no reason to expect and no power to control. Under § 49-33, as amended, the mechanic's lien has been extended to encompass claims for materials furnished or services rendered

---

[4] It is worth noting that in at least some of the out-of-state cases relied upon by the plaintiff to establish the lienability of site preparation, the building to be benefitted was in fact constructed. *Reid* v. *Berry,* 178 Mass. 260, 59 N.E. 760 (1901); *Southwestern Electrical Co.* v. *Hughes,* 139 Kan. 89, 90, 30 P.2d 114 (1934). The third case, *Green* v. *Reese,* 261 P.2d 596 (Okla. 1953), arose under a wide-ranging statute expressly covering improvements. 42 Okla. Stat. § 141 (1951).

"in the improvement of any lot or in the site development or subdivision of any plot of land . . . ."[5] The specificity of this language, when compared to its statutory predecessor, lends support to our conclusion that the statute before its amendment did not make lienable work done in road construction and site preparation. The purposeful addition of language to provide coverage for "improvement" and "site development," is a strong indication that such work was not previously lienable. See *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 129–30, 394 A.2d 731 (1978); *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974). Although the legislative history of the amended § 49-33 is, as is often true, somewhat murky, it is consistent with an intention to expand the coverage of the mechanic's lien.[6]

---

[5] This amendment to General Statutes § 49-33 went into effect on October 1, 1974; see General Statutes § 2-32; and the statute as amended provides in pertinent part: "MECHANIC'S LIEN. PRECEDENCE. RIGHTS OF SUBCONTRACTORS. If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of its appurtenances *or in the improvement of any lot or in the site development or subdivision of any plot of land,* and such claim is by virtue of an agreement with or by consent of the owner of the land upon which such building is being erected or has been erected or has been moved, *or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided,* or of some person having authority from or rightfully acting for such owner in procuring such labor or materials, such building, with the land on which it stands *or such lot or in the event that such materials were furnished or services were rendered in the site development or subdivision of any plot of land, then such plot of land,* shall be subject to the payment of such claim." (Emphasis added.)

[6] Public Acts 1974, No. 74-310 expanded the scope of General Statutes § 49-33 to include the terms "the improvement of any lot" and "the site development or subdivision of any plot of land." It is the first of these additions, "the improvement of any lot," that is at issue in the present case. In commenting on an amendment to the bill, which was subsequently enacted as Public Acts 1974, No.

## II

The unavailability of the mechanic's lien to the plaintiff defeats entirely his claim to recover on the first count of his complaint. On the second count, relating to the liability of the corporate defendant, Hardwood, as a matter of contract law, two issues remain to be addressed.

The defendant contends that it was improperly assessed for three items of damages not contemplated by the contract. The agreement of the parties originally called for the work to be done on a daily basis with records to be kept by the use of daily tickets. The defendant claims it is not responsible for invoices submitted without daily tickets after the work on the site preparation project had been stopped. These invoices, amounting to $16,800 in the aggregate, covered supervision, use of a "grader" and insurance.

In order to sustain the defendant's contention, we would have to ignore the testimony of the plaintiff

74-310, the reporting committee chairman in the House of Representatives stated: "We still have an extension of the mechanic's lien even though we don't have an extension of the time to file it. You can file it against the property or sub-division whereas heretofore you could only file it against the house that was being worked on, the building." And again, in response to the question, "Does he contend that it's the amendment that extends the applicability of the land or is it the bill itself . . . ," the reporting committee chairman, Representative Newman responded: "The bill, of course, sir." 17 H.R. Proc., Pt. 9, 1974 Sess., pp. 4138, 4140. Compare the comments of the reporting committee chairman in the Senate, Senator Rome, who stated: "The bill now as amended would provide that sub-dividers of land, persons who might also be doing site work on the land would have lien rights. The question is, under the existing court adjudications, whether or not that (sic) have or have not those rights. This clearly spells it out. They do . . . ." 17 S. Proc., Pt. 3, 1974 Sess., p. 1338.

which the trial court was entitled to find credible and persuasive. The court's finding of fact that the parties had agreed to these items and that the plaintiff had submitted reasonable bills therefor, having a legal and logical foundation in the evidence, cannot be disturbed. *State National Bank* v. *Dick,* 164 Conn. 523, 531, 325 A.2d 235 (1973); *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645 (1970); *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855 (1966). The conclusion of the trial court that the plaintiff is entitled to recover $110,048.76[7] plus interest at 18 percent per annum from the defendant Hardwood is not clearly erroneous in light of the record as a whole.

The defendant's final contention is that a judgment in the amount of $110,048.76 plus interest is not sustainable in light of the ad damnum clause in the plaintiff's complaint which sought damages in the amount of $150,000.[8] Although this issue was not initially assigned as error, it is properly before us under Practice Book, 1978, § 3060W, which abolishes the necessity of filing assignments of error. The revision of the Practice Book which enables the defendant belatedly to raise the issue is, however, of equal assistance to the plaintiff, for Practice Book, 1978, § 131 abolishes the requirement that a complaint contain a specific statement of the amount in demand. There is no reason not to apply this salu-

---

[7] The judgment on this count fails to take into account the plaintiff's right to recover for the unpaid amount due and owing on the road work performed for the defendant. In the absence of a cross appeal by the plaintiff, we are unable to correct what appears to have been an oversight.

[8] The award of interest at the rate of 18 percent per annum from October 1, 1974, to the date of judgment brings the total award to an amount in excess of $150,000.

tary procedural reform to the plaintiff's complaint. The trial court's judgment on the second count was therefore not in error.

There is error in part, the judgment is set aside and the case is remanded for the entry of judgment on behalf of all of the defendants on the first count of the plaintiff's complaint.

In this opinion the other judges concurred.