[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Romaine Scaffone, doing business as A-1 Masonry Contractors, seeks a prejudgment garnishment of a debt owed to the defendant, Orlando G. Annulli Sons, Inc. The plaintiff claims that the defendant, as general contractor, terminated his services as the masonry subcontractor on one construction project that was in progress and on another as to CT Page 421 which a subcontract had been signed but on which work had not yet begun. The plaintiff seeks to recover the value of services and materials furnished on the former job and lost profits on the latter job.
The defendant has filed an answer containing a claim for setoff for payments made to suppliers of materials and labor for work covered by the subcontract as to the project that was under construction, the Wal-Mart building. The defendant further claims as a special defense to the plaintiff's claim as to the second project, the Hall Memorial Library ("library"), that it justifiably cancelled this contract because the plaintiff was unable or unwilling to perform the requisite technical preparatory work in a competent and workmanlike manner.
As to the Wal-Mart project, the plaintiff agreed to erect the concrete block exterior of the building and perform other masonry work for the sum of $200,000.00, to be paid by the defendant in monthly progress payments. The contract provided that the masonry work would be started as soon as the plaintiff was notified by the defendant to begin, and finished according to a project schedule indicating that the masonry work was to be completed before the second week of April and the second week of May, 1991. (Ex. A). On June 10, 1991, while the masonry portion of the project was still in progress, the defendant advised the plaintiff to get off the job and hired a substitute subcontractor to complete the work. On June 13, 1991, the defendant sent the plaintiff a letter purporting to terminate the subcontract for the library project.
The trial court's function in deciding an application for a prejudgment remedy pursuant to General Statutes 52-278a et seq. is "to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." Bank of Boston, Connecticut v. Schlesinger,220 Conn. 152, 156 (1991); New England Land Co., Ltd. v. DeMarkey,213 Conn. 612, 620-21 (1990). The Connecticut Supreme Court has described the quantum of proof necessary to establish cause in various ways. It has repeatedly stated that the hearing in probable cause "is not contemplated to be a full scale trial on the merits of the plaintiff's claim" and that "the plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." Id. the Supreme Court has stated that the trial court's role is to "weigh the probabilities," id., Ledgebrook Condominium Ass'n Inc. v. Lusk Corp., 172 Conn. 577, 584 (1977), however the degree of weight required has been left unclear. Because of the Court's statement that a full scale trial on the merits is not contemplated, it appears that the quantum of proof is less than that required as to a full scale trial, that is, less than a preponderance of the evidence. CT Page 422
In New England Land Co., Ltd. v. DeMarkey, supra, at 620, the Court stated that "[t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it:. . .Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. Texas v. Brown, 460 U.S. 730, 731,103 S.Ct. 14 34, 75 L.Ed.2d 502 (1983)."
In Connecticut v. Doehr, 111 S.Ct. 2105, 2114 (1991), the United States Supreme Court expressly declined to rule as to the quantum of proof required after discussing the claims of the parties that the standard was, variously "an objective likelihood of the suit's success", id. at 2113; the plaintiff's demonstrated subjective good faith belief that the suit will succeed, id., and proof of "sufficient facts to survive a motion to dismiss." Id. The Supreme Court found the statute's provision for the granting of attachments without a hearing to constitute a denial of due process of law, tacitly finding the lack of a hearing, not the quantum of proof, dispositive. Connecticut v. Doehr, supra, at 2114.
The definition of probable cause adopted by the Connecticut Supreme Court in the cases cited above is the standard stated by the United States Supreme Court as to probable cause to seize evidence associated with criminal activity. Texas v. Brown,460 U.S. at 731. A finding of probable cause in that context is required to protect individuals from unreasonable search and seizure pursuant to the Fourth Amendment to the Constitution of the United States. In the context of a deprivation of property, however, the United States Supreme Court indicated in Doehr, supra, that the due process clause is the operative constitutional consideration, and that the process that is due is determined by reference to 1) the private interest that will be affected, 2) the risk of erroneous deprivation through the procedures used, 3) the probable value of additional safeguards, 4) the plaintiff's interest, and 5) the ancillary interest of the government in providing the procedure or foregoing the additional burdens of providing greater protection. Doehr, supra, at 2112.
If the quantum of proof for probable cause is too low, then there is an unacceptable risk of erroneous deprivation to the party whose property is sought to be attached. In the absence of post-Doehr guidance from the Connecticut Supreme Court, it seems advisable to interpret 52-278e as requiring a showing of probable cause to the level found to have satisfied requirements of due process in prior federal cases involving prejudgment deprivation of property. Specifically, in Mitchell v. W. T. Grant Co., CT Page 423416 U.S. 600, 605-6, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the United States Supreme Court found a Louisiana sequestration statute to be constitutional where the required proof was "a clear showing" on the facts presented.
The plaintiff contended at the hearing that the court should not take into consideration any of the defenses, set-offs or counterclaims entered by the defendant, but should adjudicate his application for a garnishment solely based upon the allegations of the complaint. He cited no authority for such a blind approach, and the court will instead assess the whole situation presented in determining whether the plaintiff has made a clear showing of an entitlement to deprive the defendant of the use of assets during the pendency of this case.
A. The Wal-Mart Project
As to the Wal-Mart project, the court finds that the plaintiff showed to the requisite level of proof that he had brought to the work site materials worth $76,128.00 but that the defendant has paid $63,990.00 of this amount to suppliers in order to have them, notably Connecticut Valley Block Co., continue to supply materials for the project. The plaintiff has proved to the requisite standard that he supplied materials worth $12,138.00 for which he has not been paid.
The plaintiff supplied the labor necessary to install approximately twenty-five percent of the concrete blocks needed for the masonry portion of the project at a cost he testified was $22,000.00. The defendant has paid the plaintiff $20,594.75 of the $34,138.00 ($22,000.00 plus $12,138.00) of labor and materials expended before termination.
A contractor who is terminated from a job is entitled to receive the value of the work performed to the point of termination. Simonetti v. Lovermi, 15 Conn. App. 722, 725 (1981). The plaintiff has demonstrated that he is likely to recover $13,543.25 under this measure of damages. He further claims entitlement to lost profits, however the profit he was likely to make is, by the court's calculation, approximately $8,000.00 after deduction of the cost of materials and labor necessary to complete the job.
The defendant argues that the plaintiff is not entitled to an attachment of its property even upon a showing of probable cause as to damages due for the Wal-Mart project because the plaintiff has already filed a mechanic's lien to secure its claim as to that project. That lien, Exhibit 5, secures the sum of $93,299.04. An application to discharge or reduce the lien has been filed in Superior Court in Hartford, however this court has not been CT Page 424 presented with any evidence that the lien is no longer in effect, and must therefore assume that the lien remains in force.
The purpose of a mechanic's lien is to furnish security for a contractor's labor and materials. Camputaro v. Hardwood Corp.,180 Conn. 545, 550 (1980); St. Catherine's Church Corp. v. Technical Planning Associates, Inc., 9 Conn. App. 682, 683-4
(1987). A party is not entitled to security in excess of its provable claim for damages. Kaplan v. Ellis, 1 Conn. App. 368,370 (1984). Since the plaintiff already has security in the amount of $93,299.04 by virtue of his mechanic's lien as to the Wal-Mart job, he is not entitled to a further attachment in the amount found by the court to be established to the requisite level of proof.
B. The Library Project
As is stated above, the plaintiff adduced proof that the defendant terminated his contract as to the provision of masonry services for the construction of an addition to a building known as the Hall Memorial Library in Ellington. The masonry subcontract, signed by the parties in late May, 1991, required the plaintiff to install cut stone in accordance with specifications in return for payment in the amount of $248,673.00.
Three days after ordering the plaintiff off the Wal-Mart job, the defendant sent it a letter stating that it was terminating its subcontract on the library job because of the plaintiff's "demonstrated inability to meet your contractural [sic] obligations on other projects involving this company" (Ex. E.).
The plaintiff claims in his complaint that the termination caused it to lose profits in the amount of $74,601.00.
The defendant claimed at the hearing that its decision to terminate was based on the plaintiff's inability to comprehend and perform sophisticated tasks for the library project and its estimation that he was simply not capable of the technical skills necessary.
This explanation is not contained in the termination letter and appears at best to be an afterthought. The conclusory statements of the defendant's employees speculating as to the inability of the plaintiff to complete the project were not so probative as to furnish a basis for defeating a claim for security in aid of the plaintiff's claim for contractual damages. The defendant's construction manager, Ernest Babineau, conceded that some of the delay on the Wal-Mart job was the result of delay in laying the footings needed before blocks could be laid, and the defendant did not give the court any basis to conclude that tardy CT Page 425 performance on the Wal-Mart job was either wholly the plaintiff's fault or that there was reason to believe that the same problem would prevent the plaintiff from performing its duties under the library contract.
The plaintiff testified that his anticipated profit on the library job was half the labor cost of $148,000.00, or approximately $74,601.00. The claimed profit is thirty percent of the total contract amount, and the court was not presented with any persuasive evidence to lead it to conclude that such a percentage was not a likely amount of profit for the kind of project at issue.,
The plaintiff argued that in the trial on the merits he will also be entitled to compensation for some preliminary planning work prepared by his agent, Mr. Biafore, after the contract was signed. Such work would have been part of the expense of performance, and the plaintiff has not plead in quantum meruit nor demonstrated that these preparations resulted in any benefit to the defendant.
The court finds that the plaintiff has established probable cause in the amount of $75,000.00 as to the claims made in the Fourth Count of the complaint, and he is authorized to garnish the debt owed by Wal-Mart Stores, Inc. to the defendant to the extent of $75,000.00.
This order supersedes the order entered by this court on November 22, 1991.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT