[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff Emerald Realty, Inc. ("Emerald"), and the owners of lot 5 ("Paulson") and lot 9 ("Verneris") in a subdivision known as Merrywood Estates, seek to discharge three mechanic's liens filed by the defendant United Excavating, Inc. ("United") for work done on lots 5 and 9 individually and as to the entire subdivision of Emerald. The liens seek to secure sums for labor and materials furnished to lots 5 and 9 and for road work and off-site improvement for the entire subdivision.
In June 1994 United commenced work at the subdivision. Disputes arose between Mark Richard ("Richard") of United and James McMahon ("McMahon") of the development company. For purposes of this hearing McMahon made the decision for Emerald and the lot owners. The subdivision was divided into 12 building lots serviced by a road, Post Falls Road. The discussions for the work to be performed included road work and off-site improvements consisting of paving of a new road, Post Falls Road, and off-site improvement on two town owned roads under subdivision approval (Exh. 20). Work to the individual lots included clearing stumps, grading, septic system installations, driveway installation, cellars and certain drains. The scope and extent of the work was agreed upon between Richard and McMahon. The cost of the individual lot work is disputed, however. McMahon had agreed to pay costs of lots 5 and 9 of $15,525 as result of a meeting April 6, 1995, invoiced April 23, 1995. McMahon testified that he kicked United off the job site. Richard denies that and asserts that work slowed in the winter months because of weather, payment CT Page 8742 disputes and failure of the town engineers to view the subdivision to approve work in progress.
On February 17, 1995, by letter (Exh. 7), McMahon sought a meeting to discuss the job. Richard had discussions with McMahon about being paid for past work and to resume work on lots 5 and 9. During the first week of March, Richard and another employee started work again on lots 5 and 9. The court concludes that work was started again on lots 5 and 9 from all the credible evidence presented. Work continued on lot 5 and 9 to March 29, 1995. On April 6, 1995, Richard and McMahon had a meeting to discuss their differences and work yet to be done. As of April 7, 1995, United commenced work again on the off-site roads. On April 25, 1995, United was notified to cease work on the job site. Richard testified that the work done and amounts due are as follows: Lot 5, $21,140.00; lot 9, $7,696.00; road work and off-site improvements, $93,446.00; and lot 5, for mulch work, $3,765.00.
The applicants assert that the work done was defective and incomplete. For the purposes of this hearing the court does not accept the testimony of McMahon as to the claimed costs to correct the work of United.
On April 28, 1995, United filed certificates of liens as follows:
Lot 5 $ 21,140.00
Lot 9 $ 7,646.00
Entire subdivision $ 98,846.02
The lien covering the road work was voluntarily reduced to $93,446.00.
Under Conn. Conn. Stats. § 49-35b the lienor must establish probable cause to sustain the validity of the lien. Proof of probable cause is not as demanding as proof by a fair preponderance of the evidence. See Newtown Associates v.Northeast Structures Inc., 633, 636.
Once a lienor has established probable cause the applicant must "prove by clear and convincing evidence that the validity of the lien should not be sustained on the amount if the lien claimed is excessive and should be reduced." Conn. Gen. Stats. CT Page 8743 § 49-35b(a).
The issues raised by this application are as follows:
 (1) Whether the liens were for the improvements of the subdivision subject to the liens;
(2) Whether the liens were filed timely; and
 (3) Whether the amounts of the liens should be reduced.
 1.
United argues persuasively that the liens for the road work and off-site improvements attaches to the entire subdivision. United argues that the "lienable unit requirement" was eliminated. Camputaro v. Stuart Hardwood Corporation, 180 Conn. 545,553-54 (1980). Conn. Gen. Stats. § 49-33 amended in 1974 provided coverage of liens to extend over a site development or subdivision of any plot of land. A blanket lien on the entire subdivision is appropriate in this case. See Butch v. Thangamuthu,37 Conn. App. 547, 550.
The waivers signed by United for lots 3 and 6 do not constitute a waiver of any right to the lien filed for the entire site development or site improvements. The waivers as to lots 3 and 6 specifically limit the waiver to the work identified in waivers not to the site improvements done by United.
2.
The last date United performed work at the site was in March and April 1995. Conn. Gen. Stats. § 49-34 requires the lien certificates to be filed within ninety days after the lienor has ceased to provide materials and perform services. There was an ongoing dispute between the parties as to the work and amounts due. The delays in the work of United was delayed by McMahon or others. In February the parties had an agreement to continue with the work. The work was again commenced in March and April 1995. The work was commenced not because United wanted to start the time rolling for its lien rights.
The work that was done was not trivial or not substantial. It was work that had to be completed for the success of the entire CT Page 8744 project. McMahon called back United to continue with the job. If he was that dissatisfied he could have called in another contractor. McMahon's argument that the return to work was to preserve lien rights is rejected.
The applicants have failed to establish by clear and convincing proof that United's filing was not timely.
Also, the notice requirements were statutorily complied with. Although briefed by applicants, the filing and notice challenge was withdrawn at trial.
The amounts of the liens excepting for the voluntary reduction as to the entire subdivision lien shall remain in full force and effect. McMahon did not present acceptable evidence that the costs of repair would amount to $130,000, nor did he specifically address each lien filed.
Accordingly, the application is denied.
Frank S. Meadow State Trial Referee