[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, The Connecticut Education Association, Inc., is the owner of property at 21 Oak Street in Hartford, Connecticut, known as Capitol Place. The multi-story office building located on the property serves as headquarters for the plaintiff's operations and contains additional office space available for leasing. Between May 28, 1992 and July 7, 1992, seven parties filed eight mechanic's liens against the plaintiff's property claiming payment for services rendered pursuant to a contract between the plaintiff and Prime CT Page 430 Investments Developments (Prime), its general contractor, in connection with renovations on the premises. The plaintiff filed eight separate applications to discharge these liens based on the defense of payment in full of the original contract. In the alternative, the plaintiff alleges that it is entitled to a pro-rata reduction of the mechanics liens to the extent of good faith payments by the plaintiff. The applications for discharge were consolidated for trial.
The court finds that the evidence produced at trial established the following facts. Pursuant to a lease dated August 6, 1991, between the plaintiff, as landlord, and Business Centers, of New England Inc. (Business Centers), as tenant. Business Centers occupied 7,500 square feet of the fourth floor on the northerly end of the plaintiff's building at 21 Oak Street. Pursuant to a second lease, dated January 21, 1992, between the plaintiff and Business Centers, the plaintiff leased the remainder of the space (approximately 9,973 square feet) on the fourth floor. On January 21, 1992, plaintiff, as owner, and Prime, as contractor, executed a contract for tenant improvements to the new space to be leased to Business Centers. Pursuant to the lease plaintiff undertook design and construction of the improvements based on plans and specifications provided by its architect, Symetrics, Inc. (Symetrics). These plans were based on preliminary designs approved by both Business Centers and Prime. The plaintiff agreed to pay $30.00 per square foot for a maximum of $299,190.00 for the improvements. Business Centers was responsible for all construction costs exceeding $299,190.00. A separate agreement, regarding Business Center's assumption of the excess costs, was executed between Business Centers and Prime. Pursuant to the separate agreement between Prime and Business Centers, Prime was to be paid a total of $41.96 per square foot for the leasehold improvements. Payment of the total was to be made as follows: $299,190.00 payable by the plaintiff under the contract with Prime and the balance payable by Business Centers.
The contract provided that work on the leasehold improvements would begin on January 22, 1992 and substantial completion would be accomplished no later than May 1, 1992. Prime was to receive a $15,000 advance upon execution of the contract. Progress payments were to be made by the plaintiff. The requests for subsequent payments were to be made by Prime in the form of Applications for Payment and approved by the architect prior to payment by the plaintiff. The plaintiff was CT Page 431 required to pay 75% of the sum requested in each application and would withhold a retainage of 10% of the amount payable under each application for payment. Prime subcontracted its obligations under the contract with the plaintiff to First American Construction, Inc., a corporation owned by Prime. From January, 1992 through May 1, 1992 Prime and/or First American entered into agreements with various subcontractors for services and materials for the leasehold improvements as follows:
1. Drywall, ceiling and trim work to be provided by defendant, Gilles Dube, for $84,387.00.
2. HVAC and plumbing to be provided by defendant, Yankee Sheet Metal Co., for $75,408.00.
3. Architectural millwork to be provided by defendant, Wright Architectural Millwork, for $47,859.00.
4. Installation of electrical work by the defendant, J.W.P. McPhee, for $27,000.00.
5. Interior painting for the project to be provided by defendant, Doyle Painting and Wallcovering, for $13,586.00.
6. Glass doors and walls to be provided by defendant, Chase Glass Company, for $8,054.00.
In addition to the construction contract, on January 21, 1992, the plaintiff entered into an agreement with Symetrics for interior design services at a cost of $25,000.00. he plaintiff paid $5,000 to Symetrics for the schematics phase of the project. On February 7, 1992, after the delivery of construction documents, the plaintiff paid Symetrics $20,000.00, the balance of the price of the architectural services.
Prime submitted the first request for payment on February 17, 1992 for completion of work in the amount of $77,391.00. The plaintiff paid Prime the full amount of this request on February 18, 1992. Prime submitted the second payment request for $98,990 on February 28, 1992 and was paid $54,894.75 on March 2, 1992. The plaintiff made subsequent progress payments to Prime on March 4, 1992 and March 24, 1992 in the amounts of $30,000 and $15,000 respectively. These payments were not made pursuant to any application for payment by Prime. On March 15, 1992 Prime submitted an application for payment in the amount of $104,901.00 CT Page 432 and was paid the sum of $58,988.25 by the plaintiff on March 18, 1992. Finally, Prime submitted an application for payment in the amount of $72,147.00 on April 1, 1992 and was paid the sum of $22,916.00 on April 8, 1992 by the plaintiff. Prime was not, however, receiving payments from Business Centers, pursuant to their separate agreement. Eventually, Prime became unable to pay all sums due to the defendant subcontractors. Prime ceased work on the tenant improvements in May, 1992. The plaintiff arranged and paid for the performance of work to make the space suitable for occupancy at a cost of $4,093.56.
The plaintiff concedes that the defendants have complied with all formal requirements for asserting and perfecting mechanics liens in accordance with General Statutes 49-33 et seq. General Statutes 49-33 (e) limits the remedy available by providing that "[a] mechanic's lien shall not attach to any such building or its appurtenances or to the land on which the same stands or to any lot or to any plot of land, in favor of any subcontractor to a greater extent in the whole than the amount which the owner has agreed to pay any person through whom the subcontractor claims subject to the provisions of section 49-36."
The plaintiff argues that, because the total amount of the construction contract between Prime and the plaintiff was $299,190.00, the total amount of all mechanic's liens filed by the defendants cannot exceed that amount. Relying on General Statutes 49-36 (c), the plaintiff further argues that this amount is to be reduced by the amount of good faith payments made pursuant to the contract, prior to notification of the liens. The plaintiff also asserts that, pursuant to General Statutes49-33 (f), it is entitled to credit for the reasonable cost of completion of the tenant improvements upon Prime's default.
Under General Statutes 49-cay (a), the lienor must establish probable cause to sustain the validity of its lien. That initial burden has been met by the defendants. Once probable cause is established the plaintiff, seeking discharge of the liens, must prove by clear and convincing evidence the invalidity of the lien. General Statutes 49-35b (b)(2)(B). The plaintiff did not establish by the appropriate standard the invalidity of any of the liens in question.
The plaintiff argues that because it paid the entire contract price of $299,190.00 plus an additional $4,093.56 to complete the work subsequent to Prime's breach, it is entitled to CT Page 433 discharge of all liens. The plaintiff bases this assertion on its belief that all progress payments were made in good faith. The court does not agree. General Statutes 49-36 (c) provides in part that "[n]o payments made in advance of the time stipulated in the original contract may be considered as made in good faith unless notice of the intention to make the payment has been given in writing to each person known to have furnished materials or rendered services at least five days before the payment is made." The plaintiff urges the court to adopt an interpretation of "good faith payments" that would characterize the sums paid in advance as credits against amounts underpaid in subsequent payments. This court is unwilling to adopt that liberal interpretation of good faith payments in the owner's favor.
The provisions of the mechanic's lien statute should be construed to effectuate its remedial purpose of furnishing security for the subcontractor. Nikel Mine Brook Associates v. Joseph E. Sakal, P.C., 217 Conn. 361, 364, 585 A.2d 1210 (1991). This requires construction in favor of the lien. Rene Drywall Company v. Strawberry Hill Associates, 182 Conn. 568, 573,438 A.2d 774 (1980). The plaintiff has not met its burden necessary to accomplish discharge of the liens because several payments to Prime were made in advance, and the plaintiff failed to withhold the retainage.
Several defendants assert that the $25,000 paid by the plaintiff directly to Symetrics should not be included in the amount of good faith payments made by the plaintiff. The court disagrees because the plaintiff acted in good faith and in a reasonable manner when it paid $25,000 directly to Symetrics for completion of architectural services. This amount, therefore, is included in the amount of good faith payments made by the plaintiff. The payments of $30,000 and $15,000 on March 4 and 24, 1992, however, are advances and, accordingly, not good faith payments. Nor is the excess of $19,347.54 on the first payment request. Further, the plaintiff's failure to withhold retainage constitutes an advance payment of $29,593.00. Ultimately, the total of all amounts paid in advance is $93,940.54.
The plaintiff argues, that even if it is not entitled to discharge of the liens, it is entitled to a reduction of the liens under General Statutes 49-35b (b). The court agrees. The plaintiff is entitled to a credit of $4,093.56 which it paid to complete the work to make it fit for occupancy. This amount, CT Page 434 deducted from $93,940.75 in advance payments leaves the sum of $89,847.19 in remaining proceeds to be distributed pro-rata among the defendants pursuant to General Statutes 49-36.
The defendants' liens are to be reduced on a pro-rata basis in accordance with General Statutes 49-36 as follows:
Yankee Sheet Metal — $18,204.24
First American — $29,943.95
J.W.P. McPhee — $5,600.90
Gilles Dube, Inc. — $24,642.04
Chase Glass — $1,011.73
Doyle Painting — $4,371.77
Wright Architectural Millwork — $6,072.34
For the foregoing reasons, judgment is entered accordingly.
SCHALLER, J.