[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 3337
The plaintiff, National Lumber, Inc. brought the instant action to foreclose a mechanic's lien which the plaintiff had filed against property owned by Alfred J. and Constance R. Riccitelli, two of the defendants set forth in the complaint. The action is brought by the plaintiff to recover from the defendants the sum of twenty-four thousand one hundred fifty-five and 39/100 ($24,155.39) dollars for lumber, windows and other building materials that were used in the construction of a building pursuant to a contract between the defendants and one, Jeff Gagnon, d/b/a Monticello Builders, who is also set forth in the complaint as a defendant but who will hereafter be referred to as "Gagnon" or as "general contractor."
The defendants and Gagnon entered into a written contract (Exhibit 1) for the construction of a house and the construction price was $140,000. As recited in the Defendant's Brief: "The general contractor, Gagnon, testified to $4,500 in extras, which was not disputed by the Defendant Owner." Also the plaintiff's claim of $24,155.39, supra, as the cost of materials furnished pursuant to its agreement with the general contractor is not in dispute and is supported by invoices collected in Exhibit A.
The general contractor testified that he and the defendants had an agreement whereby he would demand payment as he proceeded with the construction of the building. The contract itself which was signed on December 21, 1991 does contain within it (Exhibit 1, Page 5) a payment schedule setting forth four payments, including provision for the fourth and final payment when the "Certificate of Occupancy" is obtained. However, while the total of $140,000 appears at the end of the schedule, the intervening four slots providing for periodic payments of said $140,000 are all blank. Therefore, the written contract does not provide specifically for the payment of specific sums upon completion of certain work specifically set forth.
Having said all this, there is another agreement between the parties and it relates to the payments made to the contractor by the defendants. This record is found in Exhibit 2 consisting of two checks and three stubs, as follows: 12/28/91 — $2,500; 3/11/92 — $350; 3/12/92 — $5,000; 3/20/92 — $40,000 and a final payment on 5/7/92 of $40,000. There is agreement among the parties that the total of $87,850 was the amount paid to the general contractor. CT Page 3338
There is no issue between the parties regarding the form and filing and giving of notice of the certificate of mechanic's lien. It is agreed that the requirements of the relevant statute have been met. The plaintiff set forth in its certificate of mechanic's lien that it commenced furnishing materials on April 3, 1992 and ceased furnishing materials on June 8, 1992.
The defendants filed their answer and set forth a special defense which forms the basis of the dispute between the parties. Part of the special defense may be summarized as follows: (a) that the defendants expended sums for the reasonable costs to complete the original contract (Exhibit 1); (b) suffered damages as a result of the alleged default of the general contractor; and (c) made bona fide payments to the general contractor before receiving notice of the plaintiff's lien. Finally, that the total costs enumerated above exceeded the contract price for the construction of the building. The special defense concludes with the following:
 "This defense is grounded on Sections 49-33 (e) and (f) and 49-36 (a) and (c) of the Connecticut General Statutes."
In their respective briefs the parties have presented their views of the issues or questions that must be considered. Under the quoted sections of the special defense one issue is raised, namely, whether the defendants' expenditures totaling $74,157.91 to complete the building was a reasonable sum. A second question relates to the reasonableness of the defendants in refusing to pay the balance of the money under the contract to the general contractor thus terminating his services.
At the trial in this case the following persons appeared and testified: the plaintiff's president, William Ryan, the contractor, Jeff Gagnon, one of the defendants, Constance R. Riccitelli and the claimed expert of the defendants, Mr. David Kishel. It appeared that Mr. Kishel was called to testify to the reasonableness of the expenditures incurred to finish the job after the contractor was dismissed. It appeared to the court that Mr. Kishel had had, by his testimony, sufficient time and work in the area of construction to be admitted to testify as an expert. However, this belief was quickly diminished after he had completed his testimony. Initially he testified that he had not examined the original contract of the parties. His testimony was that he had examined the contract one week before he was to CT Page 3339 appear at the trial, long after all of the work had been completed. He did not deal directly with the sub-contractors that he had called to submit bids for the additional work. The defendant, Mrs. Riccitelli dealt directly with the sub-contractors. Mr. Kishel did carpentry work for which he was paid $7,500. This was the total sum paid to him. He testified that of the $7,500, $5,000 was for his work as a carpenter and $2,500 was for consulting. However, he also testified that he did not separate the two service items on his bill submitted to the defendants. In addition he testified that he was hired either approximately one year after Gagnon was dismissed or in the spring of 1993. However, he corrected his testimony after a luncheon recess and after consulting his notes therein, to testify that he came into the case in September of 1992.
In evaluating Mr. Kishel's testimony in its entirety, there were too many items about which he could not remember, did not know, if the work done was proper or not. Some items he did not know the cost or the reasonableness of such work.
On the basis of her expert's testimony and contrasting it with the original contractor's testimony, the court finds that the defendants have failed to sustain their burden of proof on two questions. First, as to the reasonableness of the additional costs incurred to complete the job. The second finding is that the defendants should have permitted the contractor to have continued his work to complete the job as he had promised.
The contractor submitted a list of payments made to his subcontractors. (Exhibit C). The total is $79,812.92. The agreed amount paid to Mr. Gagnon is $87,850. He testified that the balance was taken by him in partial payment of his services. Mr. Gagnon also submitted a list of additional payments for work completed prior to his removal from the job and remaining unpaid at that time. (Exhibit C, P. 2). This second amount was set forth at $38,442.27 which when added to the prior total amounts to $118,255.19. The defendants conceded that the contract figure with the approved extras of $4,500 would be $144,500. Finally, the contractor submitted as the third page of Exhibit C a list by individual names and amounts that would be necessary and have to be paid to complete the building. The total of payments to be made to complete the construction of the building by Gagnon would exceed the contract price of $144,500 by $5,744.19. The owner thus was notified both of work and materials put into the building before she dismissed the contractor and also the CT Page 3340 contractor's estimates to complete the job.
The defendant, Mrs. Riccitelli was the sole defendant to testify. She stated that she was now the sole owner of the property having received a deed from her husband conveying his interest therein. She testified that she did terminate the contract with Gagnon because he wanted more money to continue working on the building. She was present at the meeting between the parties and the contractor and counsel. She also testified that she learned then of the plaintiff's unpaid claim. She advised Mr. Gagnon that she would not pay any more sums on their contract until the job was finished and a certificate of occupancy was obtained.
On cross-examination she at first testified that she knew nothing about work performed by Mr. Gagnon and those people he had brought on the job or purchased supplies from after May 7, 1992 which was the date of her last check. After her recollection was refreshed, she acknowledged that the contract had continued up to June 8, 1992. However, Mr. Gagnon testified that he was terminated in August 1992. The contractor then conceded that he terminated his work on July 13, 1992 as set forth in his certificate of a mechanic's lien. (Exhibit 6).
On the question of the reasonableness of the costs incurred by the defendants to complete the work on the building, the defendant gave no testimony in support thereof. Nor did she testify adversely to the contractor on the quality of the work done under his supervision. In turn he testified that the defendant, Mr. Riccitelli who came often upon the job site to watch the progress of the work, remaining for long periods of time, never complained about the work that was being done.
In their respective briefs the parties agree on the lien statutes that must be considered in this case and the principal case law, namely, Rene Dry Wall Co. v. Strawberry HillAssociates, 182 Conn. 568 (1980). The pertinent parts of the statutes involved are found in footnotes 2 and 3 of pages 571-72 of said case. The court has reviewed the statutes and the opinion.
The plaintiff has exhaustively reviewed in its brief the claims made by the defendants as to the costs to complete the work done. As indicated supra the testimony of Mr. Kishel is not accepted as to the reasonableness of the expenditures made. CT Page 3341 Concessions are made by the plaintiff on the reasonable issue and as a result three options are submitted to the court. I find the second option to be the acceptable one based on all of the evidence submitted.
Accordingly judgment may enter for the plaintiff to recover for the materials sold and made a part of the defendants' building and for which the mechanic's lien was filed, the sum of $17,579.48 plus interest at the legal rate from the date of the filing of the mechanic's lien certificate.
Plaintiff has made a request for an award of attorney's fees in this action which is opposed by the defendant.
Section 52-249 of the Connecticut General Statutes, Rev. Jan. 1, 1997 provides for an attorney's fee for the plaintiff in any action of foreclosure of a mortgage or lien upon obtaining judgment.
The opposition to this award is based on the absence of a specific claim for this payment in the prayers for relief. If such a specific claim should e necessary in view of the specific provisions of the statute, supra, I believe this is covered by No. 5 of the claims for relief.
Judgment shall include an award to the plaintiff for costs and attorney's fees in the amount of $2,500.
John Ottaviano, Jr. Judge Trial Referee