[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR DISCHARGE OR REDUCTION OF MECHANIC'S LIEN
This is an application to discharge or reduce a mechanic's lien. The lien was placed upon the land of the applicants, Rodd and Andrea Friedman (the Friedmans), by the lienor, Mohican Valley Corporation (Mohican). The defendant lienor Mohican placed the lien upon the property as a result of having performed services on the Friedmans' property as a subcontractor for the general contractor, Calabrese Construction Corporation (Calabrese), without being justly compensated. The Friedmans now seek to discharge or reduce the mechanic's lien. CT Page 8669
"The guidelines for interpreting mechanic' s lien legislation are well established. Although the mechanic's lien statute creates a statutory right in derogation of the common law;. its provisions should be liberally construed in order to implement its remedial purpose of furnishing security for one who provides services or materials." (Citations omitted; internal quotation marks omitted.) Ceci Bros., v. Five Twenty-One Corp. ,51 Conn. App. 773, 777, ___ A.2d ___ (1999).
Assuming arguendo that Mohican has established probable cause to sustain the validity of its lien, the lien may nevertheless be discharged or reduced. Pursuant to General Statutes § 49-35b
(b), the court may order a lien discharged or reduced if its invalidity is established by clear and convincing evidence. General Statutes § 49-36 (c) provides: "In determining the amount to which any lien or liens may attach upon any land . . . the owner of the land . . . shall be allowed whatever payments he has made, in good faith, to the original contractor or contractors, before receiving notice of the lien or liens." "Good faith in common usage has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom of intention to defraud, and generally speaking, means being faithful to one's duty or obligation." (Internal quotation marks omitted.) Phillips v.Thomas, 3 Conn. App. 471, 474, 489 A.2d 1056 (1985)
Where "a general contractor receives progress payments that are not turned over to those who have done the work represented by the progress payments, and ultimately defaults entirely, the owner making such payments and completing such a job is protected as long as the owner acts in good faith and reasonably, as defined by the statutes." Rene Dry Wall Co. v. Strawberry HillAssociates, 182 Conn. 568, 573, 438 A.2d 774 (1980). "In determining whether the owner has met the statutory requirements of good faith and reasonableness, the trial court is making a finding of fact." Id.; see also Purcell, Inc. v. Libbey,111 Conn. 132, 139, 149 A.2d 225 (1930) (what constitutes a payment in good faith the statute leaves to judicia determination);National Lumber v. BBED Associates, Superior Court, judicial district of New Haven, Docket No. 330950 (May 21, 1992, Hodgson,J.) (same).
The Friedmans have submitted copies of two $50,000 checks, bearing the dates of May 27, 1998 and June 19, 1998, paid to Calabrese Construction Corporation in accordance with the CT Page 8670 parties' progress payment schedule. (plaintiff's Exhibits B, A 1). The Friedmans had also paid to Calabrese an additional $25,200 for extra work in regards to blasting and excavation. A narrative drawn up by the architect handling the Friedman's contract with Calabrese delineates that the work performed by Calabrese and its subcontractors including the additional surveying, excavation, earth removal and relocation was worth $71,700 and "was well short of the work necessary to be completed for the contractor to obtain the next progress payment." (Plaintiff's Exhibit A). Mohican argues that the Friedmans never made a third payment to Calabrese. Based on the contract between Calabrese and the Friedmans, the Friedmans' third payment was not due until completion and inspection of the excavation, foundation and concrete work by the architect. Because the aforementioned work was not inspected by the architect prior to the Friedmans' termination of the contract with Calabrese on November 5, 1998, the Friedmans were in no way responsible for the third progress payment. (Plaintiff's Exhibits A A-1). Furthermore, the Friedmans did not receive notice of Mohican's lien until November 10, 1998. (Application to Discharge Lien, ¶ 3)
Based on the foregoing, the court finds that the Friedman's payments to the general contractor constituted all sums due the defaulting general contractor and were made in good faith. Therefore, the court orders the discharge of Mohican's mechanic's lien.
SKOLNICK, J.