[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This suit involves a claim by the plaintiff, Kamco Supply Corp. of New England, to recover $43,988.57 from the defendants for materials it supplied to and which were incorporated into two buildings located at 434 Maplewood Avenue owned by Maplewood School Apartments Limited Partnership ("Maplewood"). The two buildings on the site were previously used for school purposes and were now being converted to thirty-two units of low and medium income housing. The plaintiff claims the defendants were CT Page 13188 supplied the material between August 8, 1997, and December 1, 1997.
The defendant Naek Construction, Inc. ("Naek") was the general contractor for the job and pursuant to its contract provided a Labor and Material Bond which it signed as Principal and which the defendant. The American Insurance Company ("American") signed as surety. Naek thereafter contracted on including approximately $71,000 in extras. The first count of the amended complaint of July 30, 1999, is a claim on the bond.
The second and third counts of the complaint are suits on mechanics liens; in count two for the sum of $41,967.06; and the third count for $2,342.82 representing the same claim for materials supplied as in the first count. The fourth count sounds in unjust enrichment. As previously stated, the defendants Naek and American Insurance answered the first count only and the defendant Maplewood only answered counts 2, 3, and 4. The plaintiff filed the required notices on the bonds and mechanics liens.
The defendants Naek and American defend on the first count on the basis that Kamco did business with the Edward Ondy Construction Company not E.S. Ondy, Inc. and that the Edward Ondy Construction Company does not qualify as a claimant under the payment bond. The main defense of Maplewood is that not all of the materials were either delivered to or incorporated into their buildings and it has paid the general contractor the full purchase price set forth in the contract.
The plaintiff first called as a witness Edward S. Ondy who testified that he has been in the construction business since 1970, went into his own self proprietorship in 1986 and formed the Edward Ondy Construction Company. That company was dissolved by the Secretary of State for failure to file necessary papers on August 19, 1994. Despite that, Ondy continued to do business under that corporate name because he claims he was not aware of the dissolution until mid 1995. As such, he went to the plaintiff in early January of 1995 to acquire it as a supplier. He applied for credit and provided references to Kamco under the name Edward Ondy Construction Company on January 17, 1995, even though as of that date that corporation had been dissolved and he had formed a new corporation known as E.S. Ondy, Inc., on January 3, 1995, which corporation was a union shop. It is apparent that he used the old corporation on his credit application because it had a track record, whereas the new corporation had just been formed. He never applied for credit with the plaintiff under E.S. Ondy, Inc. He apparently did business with Kamco under Edward Ondy Construction Company during 1995, 1996 and all of 1997 until some time in late November of 1997 when E.S. Ondy, Inc., filed for bankruptcy.
Plaintiff's exhibit F is a series of invoices from Kamco to the Edward CT Page 13189 Ondy Construction Company for materials supplied to Maplewood School Apartments, L.P., from August 8, 1997, through December 1, 1997. Apparently, Kamco believed the Edward Ondy Construction Company was still alive and well, had no knowledge of the existence of E.S. Ondy, Inc., during this period although Ondy seems to recall telling Kamco's credit manager Bob Dombroski to change the name to E.S. Ondy. He admits to never formally or in writing advising Kamco of who it was really dealing with although he had actually paid for some previously ordered materials on checks of E.S. Ondy, Inc.
Ondy further testified that in his opinion all the materials shown in Exhibit F were delivered to and incorporated into the building by the time his company left the project upon going bankrupt. He estimated his contract to have been between 85 and 88 percent completed when he left the site. He did indicate that certain small items delivered to Maplewood by Kamco may have been used on other jobs of his; but they were replaced. He was sure that no sheetrock had been removed. He admitted he paid nothing on the invoices contained in exhibit F. He also admitted his company was in financial distress and he was doing business with Prinvest Corp. wherein he was selling it his account receivables for this project for 80 percent and assigning it his payment due from Naek.
Paul Taylor, he plaintiff's president, testified that all purchase orders from Ondy came from the Edward Ondy Construction Company and not E.S. Ondy, that the mechanic's liens referenced contracts between Kamco and the Edward Ondy Construction Company and that he only became aware of the existence of E.S. Ondy, Inc. at the very end. He admitted that credit probably would not have been extended to E.S. Ondy in 1995, if he knew of it, because the corporation was new with no credit history.
At the conclusion of the case, counsel made brief arguments and it became obvious to the court that plaintiff's counsel was arguing the liability of Naek and American Insurance as to the mechanic's lien counts, even though in their answer to the final complaint of July 30, 1999, both these defendants had specifically replied that they were not answering those counts because they did not apply to them. The plaintiff had never moved for default against them for failure to answer those counts and plaintiff's counsel seemed totally unaware of the pleading problem.
Post trial on June 28, 2001, the plaintiff filed a Motion for Permission to now file default motions against both defendants and default motions. The court denied both motions as untimely and more importantly because those defendants did not defend against or contest those counts at trial. CT Page 13190
To better understand the state of the pleadings and to understand the court's dilemma, the court will summarize the pleadings.
The first amended complaint dated December 31, 1998, was in four counts. In none of the counts does it direct to which of the defendants it is intended. The first count was on the Labor and Material Bond and the defendants Naek and American Insurance answered that count on March 2, 1999, as they were the principal and surety on the bond. They did not answer counts two and three based on mechanic's liens or count four sounding in unjust enrichment. The defendant Maplewood on February 19, 1999, filed its answer only as to counts two, three and four. Just prior to this amended complaint, the court on October 5, 1998, granted Naek and American's motion to substitute a bond in the amount of $60,000 in lieu of the mechanic's liens referred to in counts two and three.
Thereafter, the plaintiff on July 30, 1999, filed another amended complaint as to counts two and three to include an allegation that Naek and American had on June 11, 1999, provided a bond in the amount of $60,000 to substitute for the mechanic's liens. On October 1, 1999, the defendant Maplewood again answered as to counts two, three and four but did not answer count one and claimed it was not applicable to it. On April 17, 2001, the defendants Naek and American Insurance again filed an answer to the amended complaint of July 30, 1999, by again answering count one only and as to counts two, three and four stated that as to the allegations in count two, three and four, they are directed to other parties. Naek and American Insurance provide no response to those counts despite the fact they had filed a bond in lieu of the mechanic's liens. That is the status of the pleadings when the evidence concluded at trial.
After the briefs were filed, it became obvious to the court that it could not render a decision as to counts two and three as to Naek and American Insurance because they had not plead to those counts. Although plaintiff's counsel should have taken the appropriate steps to protect his client, he did not.
It was obvious to the court that once Naek and American filed a bond in the amount of $60,000 in lieu of the mechanic's liens described in counts two and three and the complaint was amended to memorialize that event, that Naek and American were proper defendants under those counts.
The court on its own motion summoned counsel back to court on August 7, 2001, reopened the case and ordered Attorney Lawrence G. Rosenthal to file an answer to the amended complaint as to counts two and three on behalf of Naek and American Insurance and that was done on August 20, 2001. The court offered Attorney Rosenthal an opportunity to reopen its CT Page 13191 defense and present further evidence, but he declined the court's offer.
The facts presented so far are sufficient to determine the issues in the first count. The plaintiff bases its claim for recovery on the first count almost exclusively on its claim that it is a third party beneficiary on the labor and material bond. Naek defends on the basis that there is no privity of contract between it and the plaintiff and both Naek and American claim that the plaintiff is not a "claimant" under the bond.
The payment bond (plaintiff's exhibit Q) sets forth that in order to be covered by the terms of the bond, one must be a "claimant." The terms of the bond define "Claimant" as:
 ". . . . one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract. . . ."
This means that only those entities which have a contract with Naek (the Principal) or a direct contract with Naek's subcontractor (in this case E.S. Ondy, Inc.) can make a claim. As set forth in plaintiff's mechanic's liens (plaintiff's exhibits O and P), plaintiff had a contract with Edward Ondy Construction Company. Mr. Taylor, President of Kamco testified that Kamco only had a credit relationship with Edward Ondy Construction Company and plaintiff did not even know of the existence of E.S. Ondy, Inc. until after it filed the mechanic's liens.
Plaintiff claims that while it was invoicing the wrong company, E.S. Ondy was paying the bills. However, Mr. Taylor's testimony is credible. Plaintiff did not know it was dealing with E.S. Ondy, Inc., at all times material to the transactions. Plaintiff was always under the assumption it was selling mat rials to Edward Ondy Construction Company. Therefore, Kamco was not "in contract" with a subcontractor to Naek and not a "claimant" under the bond. Kamco was a "fourth" tier subcontractor.
Recently there have been two decisions by the Superior Courts that have considered and discussed the definition of claimant in this context. See, Northwest Waste Systems, Inc. v. Connecticut AbatementTechnologies, Inc., 27 Conn. L. Rptr. 268 (New Haven, June 2, 2000) (Alander, J.) and Fairfield Resources v. City of Danbury, 2001 CT. Sup. 5187 (Danbury, April 12, 2001) (Adams, J.) In both cases, the Superior Courts were considering a situation similar to plaintiff and whether the fourth tier subcontractor was covered under the terms of Connecticut General Statutes § 49-42, the "Little Miller Act." Not coincidentally, the provisions of the payment bond at issue here is CT Page 13192 almost the exact language contained in Connecticut General Statutes § 49-42. In both cases, the Superior Courts held that under the interpretation of the Little Miller Act, the fourth tier subcontractor did not have a claim under the Act.[1] As plaintiff is not a "claimant" under the terms of the payment bond, plaintiff's claims under Count One of the Complaint fail and judgment will enter in favor of the defendants American Insurance and Naek as to Count One.
As to Counts Two and Three, the mechanic's lien counts, the defendants Naek and American Insurance on June 11, 1999, substituted a bond in the amount of $60,000 in lieu of the mechanic's liens. As such, the defendant Maplewood is no longer a party at interest in Counts Two and Three; therefore, judgment is rendered for it as to these two counts. Ogera v.Stamford Towers, Ltd., 191 CT. Sup. 5654 (Stamford, June 20, 1991) (Karazin, J.). Obviously any defenses of Maplewood are also available to Naek and American on their bond.
For its defense to the mechanic's lien counts, the defendants have filed special defenses. In its Fourth Special Defense, they claim that the plaintiff failed to properly file and serve its Notice of Intent to file a mechanic's lien in accordance with Connecticut General Statutes § 49-35. The court finds that the defendants have failed to prove that Special Defense. In its Sixth Special Defense, the defendant Naek claims it has no liability to the plaintiff under the bond substituted as collateral for the property for the mechanic's liens. The court again finds that defense not to have been proven. The Fifth Special Defense merely states that these defendants having substituted a bond have all the defenses available to the property owner Maplewood. The court agrees.
The first of these defenses was that the plaintiff has failed to prove that the materials set forth in the invoices (plaintiff's exhibit F) was not delivered and incorporated into the project. The court des not agree. Mr. Taylor, the plaintiff's president, identified the invoices for all the goods ordered by Edward Ondy Construction Corp. for the project that is the subject of this case. He described how deliveries are made and what paper work accompanies his driver. He testified that if deliveries are not made they hear from the contractor and in this case there were no complaints. Edward Ondy testified after reviewing all of the invoices within plaintiff's exhibit F from the plaintiff to his company for the Maplewood job that all of the materials were delivered and incorporated into the project. He testified that certain small items may have gone to other jobs of his, but they were all replaced. He testified that all of the sheetrock went into this job. The court finds this testimony credible and consistant with other evidence on this subject. This is confirmed by the testimony of Charles A. Ahlstrom, the CT Page 13193 architect for Maplewood, who after reviewing the plaintiff's invoices testified that he believes that all of these materials were installed in the project, that he saw no one remove any materials from the project, but obviously cannot say that the exact materials shown on the invoice were installed. There is simply no credible evidence to support the fact that the materials described in the invoices (plaintiff's exhibit F) were not delivered to the site and incorporated into the buildings.
The defendants' argument is premised mainly on the facts set forth in defendants' exhibit 3, the Application and Certificate for Payment as of July 31, 1997, signed by Sandra Chuck on behalf of Naek and the architect Charles Ahlstrom. That document indicated that E.S. Ondy, Inc., had requisitioned and was paid for 85% of the gypsum and wallboard work on the contract, leaving only a balance of $48,635 to finish the balance of Ondy's core work not including extras. The claim is then made that if the job was 85% complete as of July 31, 1997, Ondy could not possibly have used all the wallboard ordered from the plaintiff after that date on the job. That might be true if there was not an explanation, which there was.
This job had a critical time line. It had to be completed by December 31, 1997, in order to take advantage of certain available tax credits. The general contractor knew that Ondy was in trouble. They knew from the payment applications that Ondy had negotiated his account receivables for 80% of value to Prinvest and that payments by Naek were going directly to Prinvest. Ondy was absolutely critical to getting the job completed and they had to keep him afloat. With the ten percent retainage, Ondy was only receiving 70% of his requested payments. Mr. Ahlstrom, the architect, who the court believes to be totally unbiased, testified that he was asked to certify the higher figure for completed work as of July 31, 1997, so that more money could be put in Ondy's pocket. Mr. Ahlstrom testified that the actual percentage of completion of Ondy's work as of July 31, 1997, was 65% rather than 85%. With that explanation and the other facts testified to, this court concludes that all the materials shown on plaintiff's exhibit F were delivered to the site by the plaintiff and incorporated into the two buildings.
Finally, the defendants argue that Maplewood paid all the funds due under the contract to Naek. Specifically, they argue at page nine of their brief that at the time of the filing of the mechanic's liens by the plaintiff that Maplewood had paid Naek all the funds then due under the contract and continued to pay Naek the costs for completion of the project. They then claim that pursuant to Connecticut General Statutes § 49-36 if the owner of the property makes payments in good faith to the general contractor to complete the project, then the owner is protected from a subcontractor's mechanic's lien. They then cite the case CT Page 13194 of Rene Dry Wall Co. v. Strawberry Hill Associates, 182 Conn. 568 (1980) in support of their position. The court finds that case inapposite to the facts in this case.
To be specific, in this case the plaintiff filed two mechanic's liens, the first dated November 26, 1997, filed with the Bridgeport Town Clerk on December 5, 1997, in the amount of $41,967.06; the second lien in the amount of $2,342.82 dated December 31, 1997, was filed for record on January 13, 1998. Naek had not in fact been paid in full by Maplewood as of that time. In fact, Naek sued Maplewood to foreclose on its own mechanic's lien dated March 24, 1998, and recorded March 26, 1998, in the amount of $559,372.80. The complaint dated March 25, 1999, having a return date of April 27, 1999, alleged that as of that date $160,000 had been paid on the account of $559,372.80. At trial, Rashid Hamid, the president of Naek, testified that subsequent to the filing of Naek's mechanic's lien, it was paid about $200,000.
In addition, plaintiff's exhibit Y is a series of 17 checks totaling over $200,000 on the account of Maplewood Court Mutual Housing from January 30, 1998, through March 26, 1998, paid to subcontractors of Naek for work or materials supplied to Maplewood School Housing. That entity, Maplewood Court Mutual Housing, was the parent of the limited partnership that was the owner of Maplewood School Housing. It nor Maplewood School Housing paid anything to Kamco from the date of the filing of its mechanic's liens and notices, all of which took place by January 13, 1998.
In the court's opinion, based on the facts of this case, § 49-36
offers these defendants no safe harbor.
The court does agree that certain items listed in plaintiff's exhibit F are for equipment and are not part of a mechanic's lien. They are listed on page eight of the defendants' brief and total $1,444.03. The total of the mechanic's liens was $43,988.57 from which $1,440.03 should therefore be deducted leaving a balance of $42,544.54. Judgment shall enter in that amount against Naek and American Insurance as to Count Two and Three with interest at the rate of ten percent (10%) from January 15, 1998. The court will not award counsel fees as to Counts Two and Three as the judgment plus interest exhausts the bond in the amount of $60,000.
Judgment may enter for the defendant Maplewood on Court Four alleging unjust enrichment as the court concludes that the plaintiff has failed to prove all the elements of that doctrine by the applicable standard.
GORMLEY, J. CT Page 13195