******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGERS, C. J., with whom ZARELLA, J., joins, dissenting. I respectfully dissent from the majority opinion because I believe that a standard foreclosure policy may be adopted as an internal business operating procedure and need not be adopted as a rule. In reading its decision, I believe the majority ignores both the statutory definition of a rule and improperly expands the scope of the protections set forth in the standard foreclosure policy provision, General Statutes (Rev. to 2011) § 47-258 (m) (3),[1] which is part of Connecticut's Common Interest Ownership Act (act), General Statutes § 47-200 et seq.

The text of § 47-258 (m) (3) addressing the commencement of a foreclosure action, like the one in the present case brought by the plaintiff, The Neighborhood Association, Inc., against the defendant Jill M. Limberger,[2] the owner of a condominium unit in The Neighborhood, a common interest community, is silent as to whether the foreclosure policy must have been adopted pursuant to the rule requirements contained in the act. Instead, § 47-258 (m) (3) simply provides that the executive board of a unit owner's association (association), such as the plaintiff, must either vote to commence a foreclosure action specifically against a unit or have adopted a standard policy that provides for foreclosure against that unit. Therefore, we must look to other sections of the statutory scheme for guidance.

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Joseph General Contracting, Inc.* v. *Couto*, 317 Conn. 565, 586, 119 A.3d 570 (2015). "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010).

I begin with the statutory definition to determine

whether the standard foreclosure policy needs to be adopted as a rule. General Statutes § 47-202 (31) provides: " 'Rule' means a policy, guideline, restriction, procedure or regulation of an association, however denominated, which is adopted by an association pursuant to section 47-261b which is not set forth in the declaration or bylaws and which governs the conduct of persons or the use or appearance of property." More precisely, a rule "means a policy . . . which is not set forth in the declaration or bylaws . . . ." General Statutes § 47-202 (31). It is undisputed that in the present case, The Declaration of The Neighborhood (declaration) does give the unit owners notice of the plaintiff's right to foreclose.[3] In fact, the language of the declaration closely tracks the language of § 47-258, which details an association's statutory lien and methods of enforcement. See generally General Statutes (Rev. to 2011) § 47-258 (a), (d) and (j).[4] Because the right of the plaintiff to foreclose is set forth in § 19.4 (g) of the declaration, it is clear to me that this policy falls outside the definition of a rule.[5]

While I believe that the text of the definition is dispositive, I note that the majority concedes that the definition of a "rule" set forth in § 47-202 (31) cannot be construed so broadly that it applies to *any* policy or procedure of the association that applies to *any* person, because such a construction would read out General Statutes § 47-261b (g), which provides that "[a]n association's internal business operating procedures need not be adopted as rules."[6] Through its examination of extratextual sources, the majority draws the "limiting principle" that business operating procedures cannot be "policies that impact unit owners' rights and obligations, directly or indirectly." A review of § 47-261b, the rule-making provision, however, provides more reasonable limiting parameters.[7] Subsections (c) through (f) of § 47-261b detail the matters that an association may address in a rule. See General Statutes § 47-261b (c) (construction and design criteria and aesthetic standards, procedures for enforcement and procedures for association's failure to act within reasonable time on construction application); General Statutes § 47-261b (d) (time, place, size, number and manner of flag displays); General Statutes § 47-261b (e) (time, place and manner of peaceful assemblies on common elements); General Statutes § 47-261b (f) (use of or behavior in residential units). In my view, the provisions of § 47-261b (c) through (f) support the conclusion that the core legislative intent of the rule-making provisions was to ensure that unit owners would have notice of and an opportunity to weigh in on a proposed rule that would affect rights that are traditionally associated with private home ownership or constitutionally protected speech rights.[8]

An association's standard foreclosure policy is removed from such concerns. An ordinary homeowner

does not have a property or constitutional right to notice and comment regarding the specific foreclosure procedures that will apply to the foreclosure of his or her home. Rather, homeowners are aware that if they have a mortgage, the mortgagee can foreclose and they must only receive notice of foreclosure for the action to proceed. See, e.g., General Statutes § 49-24b (a) ("a mortgagee who desires to foreclose upon a mortgage encumbering residential real property of a mortgagor shall give notice to the mortgagor by registered or certified mail, postage prepaid, at the address of the residential real property that is secured by such mortgage, in accordance with the relevant notice provisions of this chapter"). Similarly, unit owners are deemed to be on notice of the association's lien and therefore its ability to foreclose, even without all the details that a standard foreclosure policy could provide. See General Statutes (Rev. to 2011) § 47-258 (d) ("Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required."); General Statutes (Rev. to 2011) § 47-258 (j) ("[t]he association's lien may be foreclosed in like manner as a mortgage on real property").

In other words, there is nothing in the language of the statute regarding rules that suggest that if a standard foreclosure policy meets the protections afforded in the statute that its adoption requires notice and comment. See, e.g., *Rene Dry Wall Co.* v. *Strawberry Hill Associates*, 182 Conn. 568, 573, 438 A.2d 774 (1980) (stating that despite fact that mechanic's lien legislation is remedial in nature, which counseled "generous construction" in favor of lien, it did not permit court to extend mechanic's lien beyond that authorized by statute). It is undisputed that both policies here do meet those baseline protections.

Finally, other language in the statutory scheme also supports the conclusion that a standard foreclosure policy need not be adopted as a rule. Section 47-258 (m) (3) authorizes the board to vote on a unit-by-unit basis on foreclosure, in which case the unit owners would not receive rule-like notice and comment. Thus, the legislature clearly did not intend that notice and ability to comment were necessary in a foreclosure situation.

For all the foregoing reasons, I am not persuaded by the majority's analysis and would hold that a standard foreclosure policy is an internal business operating procedure and therefore not subject to the act's rule-making provisions.

I respectfully dissent.

[1] General Statutes (Rev. to 2011) § 47-258 (m) provides: "An association may not commence an action to foreclose a lien on a unit under this section unless: (1) The unit owner, at the time the action is commenced, owes a sum equal to at least two months of common expense assessments based on the periodic budget last adopted by the association pursuant to subsection

(a) of section 47-257; (2) the association has made a demand for payment in a record; and (3) the executive board has either voted to commence a foreclosure action specifically against that unit or *has adopted a standard policy that provides for foreclosure against that unit.*" (Emphasis added.)

Section 47-258 has been amended since the time of the events relevant to this action. See Public Acts 2013, No. 13-156, § 1. Subsequent references herein to § 47-258 are to the 2011 revision.

[2] See footnote 2 of the majority opinion for a listing of other defendants in this action who are not parties to this appeal.

[3] Section 19.4 of the declaration provides in relevant part: "(a) The [a]ssociation has a statutory lien on a [u]nit for any assessment levied against that [u]nit or fines imposed against its [u]nit [o]wner from the time the assessment or fine becomes delinquent. . . .

"(c) Recording of this [d]eclaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this [s]ection is required. . . .

"(g) The [a]ssociation's lien may be foreclosed in like manner as a mortgage on real property. . . ."

[4] General Statutes (Rev. to 2011) § 47-258 provides in relevant part: "(a) The association has a statutory lien on a unit for any assessment attributable to that unit or fines imposed against its unit owner. . . .

"(d) Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required. . . .

"(j) The association's lien may be foreclosed in like manner as a mortgage on real property. . . ."

[5] By way of example, the majority argues that under my analysis, if one of the rule-making provisions was incorporated into the declaration, notice and comment would then not be required. It is clear to me, however, that if an association were to make such a claim, it would be obvious that it was trying to wrongfully circumvent the rule-making section, which requires notice and comment for that subject matter. See footnote 7 of this opinion. In contrast, there is no foreclosure provision language that requires notice and comment.

[6] In further support of its conclusion that a standard policy for foreclosure must be adopted as a rule, the majority quotes the prefatory note of the Uniform Common Interest Ownership Act of 2008 (uniform act), on which our act was modeled, which provides that it "proposes new and considerable restrictions on the foreclosure process as it applies to common interest communities." Unif. Common Interest Ownership Act of 2008, prefatory note, 7 U.L.A. (Pt. 1B) 225 (2009). Nothing in this prefatory note, however, compels the conclusion that the legislature intended that standard foreclosure policies must be adopted as rules. I agree that, *together*, all of the procedures, criteria, and specific restrictions adopted in the act help protect unit owners facing foreclosure. For instance, an association cannot bring a foreclosure action unless the owner owes at least two months of fees and the association has made a demand for payment. Nevertheless, the comments of the uniform act placing similar restraints on foreclosure recognize that these special procedures "[t]*aken together*" would "respond in a concise but responsible way to the widespread reports of abuses in this field." (Emphasis added.) Id., § 3-116, comment (7), p. 380.

[7] General Statutes § 47-261b provides: "(a) At least ten days before adopting, amending or repealing any rule, the executive board shall give all unit owners notice of: (1) The executive board's intention to adopt, amend or repeal a rule and shall include with such notice the text of the proposed rule or amendment, or the text of the rule proposed to be repealed; and (2) the date on which the executive board will act on the proposed rule, amendment or repeal after considering comments from unit owners.

"(b) Following adoption, amendment or repeal of a rule, the association shall give all unit owners notice of its action and include with such notice a copy of any new or amended rule.

"(c) Subject to the provisions of the declaration, an association may adopt rules to establish and enforce construction and design criteria and aesthetic standards. If an association adopts such rules, the association shall adopt procedures for enforcement of those rules and for approval of construction applications, including a reasonable time within which the association must act after an application is submitted and the consequences of its failure to act.

"(d) A rule regulating display of the flag of the United States must be consistent with federal law. In addition, the association may not prohibit display, on a unit or on a limited common element adjoining a unit, of the

flag of this state, or signs regarding candidates for public or association office or ballot questions, but the association may adopt rules governing the time, place, size, number and manner of those displays.

"(e) Unit owners may peacefully assemble on the common elements to consider matters related to the common interest community, but the association may adopt rules governing the time, place and manner of those assemblies.

"(f) An association may adopt rules that affect the use of or behavior in units that may be used for residential purposes, only to:

"(1) Implement a provision of the declaration;

"(2) Regulate any behavior in or occupancy of a unit which violates the declaration or adversely affects the use and enjoyment of other units or the common elements by other unit owners; or

"(3) Restrict the leasing of residential units to the extent those rules are reasonably designed to meet underwriting requirements of institutional lenders that regularly make loans secured by first mortgages on units in common interest communities or regularly purchase those mortgages, provided no such restriction shall be enforceable unless notice thereof is recorded on the land records of each town in which any part of the common interest community is located. Such notice shall be indexed by the town clerk in the grantor index of such land records in the name of the association.

"(g) An association's internal business operating procedures need not be adopted as rules.

"(h) Each rule of the association must be reasonable."

[8] The majority appears to conclude that § 47-261b sheds no light on what is a rule as the majority fails to conduct the previously discussed analysis using § 47-261b. See *Hartford/Windsor Healthcare Properties*, *LLC* v. *Hartford*, 298 Conn. 191, 198, 3 A.3d 56 (2010) ("[i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction" [internal quotation marks omitted]). I would conclude, however, that the legislature intended that any policies or procedures that relate to the matters described in subsections (c) through (f) of § 47-261b *must* be adopted by rule. Indeed, the majority does not contend otherwise. Thus, by negative implication, the statute sheds light on the legislative intent regarding the types of policies and procedures that need *not* be adopted as a rule. See General Statutes § 47-261b (g). Contrary to what the majority suggests, this look to the broader statutory scheme provides a *limiting* principle to the literal interpretation of a "rule," which is far less broad than those the majority proposes.

————————————————